Stephen K. SAHM, Appellant,

v.

V-1 OIL COMPANY, a corporation, Appellee.

No. 9647.

United States Court of Appeals
Tenth Circuit.

Oct. 16, 1968.

Rehearing Denied Dec. 2, 1968.

Justin C. Stewart, of Stewart, Topham & Harding, Salt Lake City, Utah, for appellant.

Daniel L. Berman, Salt Lake City, Utah, for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

DAVID T. LEWIS, *Circuit Judge*.

■ This appeal is taken from an order of the District Court for the District of Utah dismissing the appellant-plaintiff's amended complaint and action for failure to state a claim upon which relief can be granted. Rule 12(b, c), Fed.R.Civ.P. The complaint is founded on section 1 of the Sherman Act[1] and we accept the allegations as true for the purposes of present review. United States v. Reilly, 10 Cir., 385 F.2d 225. The allegations need only to be narratively summarized.

On August 26, 1966, plaintiff by written instrument leased from defendant a retail gasoline service station located in Salt Lake City, Utah. The lease provided for a primary term of one year, and thereafter from year to year, with the right to termination reserved to each party through thirty-day written notice. The lease contemplated the operation of the service station under defendant's trade name and colors. At the same time the parties entered into an oral agreement providing for the consignment to plaintiff of gasoline furnished by defendant and to be retailed at prices set by defendant. Plaintiff's commission profit was variable and dependent in amount upon the retail price level as determined by defendant.

Plaintiff abided by the terms of the total agreement until the middle of October 1966, at which time, without defendant's consent, he raised his retail price from 26.9¢ per gallon to 29.9¢ per gallon. On October 26, defendant through its sales manager protested the price increase and threatened cancellation of the lease unless plaintiff would resume compliance with the agreement as it pertained to retail sales pricing. On October 28, defendant gave letter notice of the cancellation of the lease effective in thirty days as provided by the lease. A few days later plaintiff was told by defendant's sales manager that termination could be prevented if plaintiff would set his retail price in accord with defendant's schedule. Plaintiff remained adamant and the lease was canceled on November 28, 1966. Plaintiff asserts the cancellation was motivated by his refusal to set his retail price at levels fixed by defendant, that damage resulted, and characterizes the agreement and acts of defendant as a collusive price-setting scheme violative of the cited statute.

■ It is immediately apparent that plaintiff has alleged the existence and operation of a total agreement that if continued would directly and effectively control both prices and profits. Such an agreement or combination smacks of a per se violation of § 1 of the Sherman Act. Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. Indeed, de-

---

1. Section 1 reads in relevant part "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *." 26 Stat. 209, 15 U.S.C. § 1.

fendant concedes the violative nature of the plan during its operative period but argues that the complaint is fatally defective because of a lack of an existing conspiracy at the time of the cancellation of the lease and during the period for which damages are sought. Defendant thus characterizes the complaint as alleging no more than a mere unilateral refusal to deal regardless of motivation and so within the confines of acceptable business policy.

■ It is true that a mere announcement in advance of a policy and an unilateral refusal to deal with those who reject the announced policy does not run counter to the antitrust laws; [2] however, where the producer or supplier "secures adherences to his suggested price by means which go beyond his mere declination to sell to a customer who will not observe his announced policy," United States v. Parke, Davis & Co., 362 U. S. 29, 43, 80 S.Ct. 503, 511, 4 L.Ed.2d 505, the antitrust laws are violated. Petitioner herein alleges that before appellee canceled the lease his agent threatened immediate cancellation of the lease unless appellant complied with the provisions of the illegal agreement and it was only when such threat failed and in response to the failure that the lease was canceled. Also petition alleges that during the thirty-day cancellation period required by the written contract that appellee's agent called upon him and assured him that he could save the lease if he would abide by the oral resale price maintenance agreement. This alleged attempt on behalf of appellee and his agent to coerce appellant into reinstating an illegal agreement cannot be classified as a mere refusal to deal.

Defendant also emphasizes the fact that the complaint contains no allegation that defendant conspired with others in price setting and does allege affirmatively that plaintiff repudiated the admittedly prohibited agreement before the cancellation of the lease. Therefore, so says defendant, there was no existent conspiracy to found a section 1 violation, citing Quinn v. Mobil Oil Co., 1 Cir., 375 F.2d 273, cert. denied 389 U.S. 801, 88 S.Ct. 8, 19 L.Ed.2d 56; Dart Drug Corp. v. Parke, Davis & Co., 120 U.S.App.D.C. 79, 344 F.2d 173; House of Materials, Inc. v. Simplicity Pattern Co., 2 Cir., 298 F.2d 867; Nelson Radio & Supply Co. v. Motorola Inc., 5 Cir., 200 F.2d 911, cert. denied 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356. We deem such reasoning to be faulty.

■ Where, as here, the resale price maintenance agreement is tied to and enforced by related agreements between the parties, and where the related agreements are used by one of the parties in his attempt to have the illegal agreement reinstated, an agreement for purposes of § 1 of the Sherman Act is established and continued even though the resale price maintenance agreement itself is repudiated by the injured party prior to the conduct of the other party which causes the injury. If we were to hold otherwise, a paradox would emerge which would allow the injured party to bring suit only if he followed the illegal agreement but would prevent such a suit where the injured party refused to continue to be a party to the illegal agreement. To allow such a paradox would defeat the policy of the antitrust laws as stated by Mr. Justice Black in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 135, 139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982, that

the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws.

■ In the present case the resale price maintenance agreement and the thirty-day termination clause, which appellee relied upon to terminate the lease and which in turn terminated appellant's

---

2. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, 7 A.L.R. 443.

source of livelihood, should be deemed inseverable and the latter should be construed as an agreement which would support a § 1 cause of action. It was the termination agreement which enabled appellee to attempt to coerce appellant into obeying the resale price maintenance agreement and to punish him for disobeying. That the resale price maintenance agreement itself does not have to be technically in "existence" at the time of the injury in order to support a cause of action under § 1 finds comfort in recent Supreme Court decisions. Mr. Justice White in writing for the majority in Albrecht v. Herald Co., 390 U.S. 145, 150, 88 S.Ct. 869, 872, 19 L.Ed.2d 998, in footnote 6 of that opinion stated the petitioner therein could have asserted an illegal combination under § 1 of the Sherman Act by claiming "a combination between respondent and himself, at least as of the day he unwillingly complied with respondent's advertised price" and this was true even though the conduct of respondent therein which caused the petitioner's injury occurred after the petitioner had reneged on his agreement to follow respondent's advertised price. Also Mr. Justice Black in his majority opinion in *Perma Life*, supra, cited Simpson v. Union Oil Co. of California, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98,[3] not for the proposition that a conspiracy could be found by an expressed or implied agreement between the lessor (oil company) and its other dealers, as appellee herein argues the case stood for, but for the proposition that a "conspiracy" could be found solely on the agreement between the lessor and the alleged victim of the illegal agreement. *Simpson*, so interpreted, cannot be distinguished in principle from the case at bar. So, too, it is manifest that the defense of in pari delicto does not defeat plaintiff's alleged cause of action as inherent in his claim and as a matter of law. Perma Life

Mufflers, Inc. v. International Parts Corp., supra.

The judgment is reversed and the case remanded with instructions to reinstate the action and the amended complaint.

---

3. Simpson held that the supplier of crude oil to the petitioner therein had violated the antitrust laws by attempting to maintain resale prices through the coercive type of "consignment" and lease agreements.