316 F.Supp. 435 (1970)
EATON, YALE AND TOWNE, INC., a corporation, Plaintiff,
v.
SHERMAN INDUSTRIAL EQUIPMENT CO., a former Missouri corporation, and F. James Sherman, John B. Weltmer, and John H. Kreamer, Individually and as Statutory Trustees of said corporation, Defendants.
No. 68 C 139(2).
United States District Court, E. D. Missouri, E. D.
March 31, 1970.
*436 *437 Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Lashly, Caruthers, Rava, Hyndman & Rutherford, St. Louis, Mo., for Sherman Industrial Equipment Co., F. James Sherman and John B. Weltmer.
John H. Kreamer, pro se, Gage, Hodges, Kreamer & Varner, Kansas City, Mo., for defendants.

MEMORANDUM
MEREDITH, District Judge.
This matter was tried to the Court without a jury. Eaton, Yale and Towne, Inc., the plaintiff-franchisor, brought this action against Sherman Industrial Equipment Co., defendant-franchisee, and several individual defendants for money owed from transactions arising out of the franchise relationship, and the defendants have counterclaimed. The Court has jurisdiction by virtue of diversity of citizenship (plaintiff is an Ohio corporation, with its principal place of business in Ohio, and Sherman Industrial Equipment Co. is a Missouri corporation, with its principal place of business in Missouri, and the individual defendants, John B. Weltmer, F. James Sherman, and John H. Kreamer, are citizens of Missouri), and an amount in controversy in excess of $10,000.00.
Plaintiff's complaint is in four counts. In Count I, plaintiff alleges that the following amounts are owed by Sherman Industrial to it: (1) $24,507.97 as the balance due after the foreclosure of various chattel mortgages held by plaintiff; (2) $4,851.30 as the expense of the foreclosure sale mentioned above; (3) $31,919.93 for the sale of six forklift trucks out of trust; (4) $14,082.80 for merchandise sold to Sherman Industrial which resold the merchandise, assigned the accounts receivables to plaintiff, collected the accounts, and failed to pay plaintiff for the merchandise; (5) $36,878.59 as the judgment on a note dated October 4, 1967, in the amount of $30,983.90, with $1,084.44 in interest and $4,810.25 in attorneys' fees; (6) $55,104.30 for merchandise delivered to defendant and other obligations owed to plaintiff. The total claim for damages in Count I is $167,344.89.
In Count II, plaintiff has abandoned its prayer for damages and asks for a judgment stating that the seizure of two forklift trucks by the United States Marshal was lawful.
In Count III, plaintiff seeks a judgment against the individual defendant Weltmer on a guarantee in the principal amount of $110,000.00, with $9,900.00 interest and attorneys' fees of $16,500.00, for a total of $136,400.00.
In Count IV, plaintiff seeks a judgment against Sherman, Weltmer and Kreamer, individually, and as statutory trustees of Sherman Industrial, in the amount of $42,971.38, on account of moneys received and debts incurred by them during the period when they were acting as statutory trustees.
To all four counts, the defendants have alleged denial of liability or affirmative defenses which will be discussed later.
The defendant Sherman Industrial has also filed several counterclaims against the plaintiff in its First Amended Counterclaim. In Count I, it alleges that the plaintiff replevied and illegally detained four forklift trucks belonging to Sherman Industrial, damaging Sherman Industrial in the amount of $20,000.00 In Count II, Sherman Industrial alleges that plaintiff breached the franchise agreement, damaging it in the amount of $250,000.00. In Count III, Sherman Industrial alleges a violation of 15 U.S.C. §§ 1221-1225 (Automobile Dealers Day in Court Act), and prays for damages in an amount in excess of $250,000.00. In *438 Count IV, defendant claims a lessening of competition and monopoly and claims damages in excess of $250,000.00 under 15 U.S.C. §§ 14, 15. In Count V, defendant alleges a combination between plaintiff and Eaton, Yale and Towne Credit Corporation (Credit Corporation) in violation of Section I of the Sherman Act, 15 U.S.C. § 1, and claims treble damages. In Count VI, defendant alleges a violation of 15 U.S.C. § 2 by means of combination and monopoly, damaging defendant in the amount of $250,000.00. In Count VII, the defendant alleges that after the plaintiff terminated the franchise, it contracted with defendant to purchase some assets of the defendant. The plaintiff repudiated the agreement and defendant was damaged in the amount of $250,000.00. In Count VIII, defendant alleges that plaintiff conducted the foreclosure auction in a commercially unreasonable manner, damaging defendant in the amount of $150,000.00. Count IX, alleges that the contract, reliance and trust defendant had with plaintiff created a fiduciary relationship and placed the plaintiff in the position of a fiduciary toward the defendant. Defendant claims damages in excess of $500,000.00 from the alleged breach of plaintiff's fiduciary duty.
Before determining the specific issues involved in this case, it will be necessary to describe the general background of the relationship between the plaintiff and defendants. The plaintiff is a large corporation with operations national in scope. One of its operating divisions, the Yale Material Handling Division, manufactures and distributes forklift trucks. Early in 1966 it entered into a contract with the defendant Sherman Industrial for that company to become Yale's St. Louis distributor.
Defendant Sherman Industrial was incorporated under the laws of the State of Missouri in January of 1966, and had its principal place of business in St. Louis County, Missouri. The charter of defendant Sherman Industrial was forfeited under the laws of the State of Missouri as of January 1, 1968. At the time of said forfeiture, defendant F. James Sherman was the president, defendant John B. Weltmer was vice president and treasurer, and defendant John H. Kreamer was the secretary, and those three individuals comprised the entire board of directors of defendant Sherman Industrial. The forfeiture of said corporate charter was rescinded under the laws of the State of Missouri on June 18, 1968.
Prior to March 1, 1966, plaintiff's Yale Division distributed its products in parts of southern Illinois and eastern Missouri through an independent dealer located in St. Louis County known as Midvale Materials Handling Equipment Company. In the summer of 1965, plaintiff began to seek a replacement for Midvale and entered into negotiations with Sherman and Weltmer. On or about January 12, 1966, plaintiff terminated Midvale's dealership, effective March 1, 1966. In February of 1966, plaintiff and defendant Sherman Industrial executed a Dealer Selling Agreement, effective March 1, 1966, whereby said defendant became a dealer for plaintiff's Yale Division.
During the period from the early fall of 1965 through approximately January 6 or 7, 1966, defendants Weltmer and Sherman were in personal or telephone contact with various representatives of plaintiff's Yale Division regarding the St. Louis dealership. During the course of these negotiations, a regional representative for plaintiff's Yale Division and Mr. Joseph P. Grace, manager of distribution services for said Division, informed defendants Weltmer and Sherman that plaintiff would require a $150,000.00 investment by them in the St. Louis dealership. A good part of the negotiations were concerned with the manner in which this sum would be invested in the dealershipa stock purchase, a loan to the proposed dealership with the lender subordinating his rights to those of plaintiff as a creditor of the dealership, or a personal guarantee by defendant Weltmer of the payment of the dealership's accounts with plaintiff's Yale Division.
*439 Ultimately, Weltmer and Sherman agreed to invest $40,000.00 in stock to be issued by Sherman Industrial, and Weltmer agreed to lend the dealership $110,000.00 until the net worth of the company should reach $150,000.00. He declined to subordinate the loan to debts owed by Sherman Industrial to plaintiff, but agreed instead to guarantee "all obligations and indebtedness of Sherman Industrial Equipment Co. to said Eaton, Yale & Towne, Inc., its successors and assigns, up to the sum of one hundred ten thousand dollars ($110,000) * *" and signed a guarantee so stating.
Sherman Industrial commenced business as a dealer of plaintiff's Yale Division on March 1, 1966. Prior thereto, plaintiff's representatives assisted Sherman Industrial in hiring employees, setting up books of account, installing its parts department, and arranging for the transfer of new trucks from Midvale to Sherman Industrial. Thereafter, over a period of nearly two years, plaintiff sold and shipped to Sherman Industrial additional parts, trucks and accessories on open account or subject to floor plan or rental fleet chattel mortgages.
Plaintiff's Yale Division distributed its products through independent dealers and factory-owned branches. The sales of equipment to Yale Division dealers were: (1) to fill the specific order of a customer of the dealer; (2) for inventory; or (3) to be placed in a rental fleet from which the dealer would rent trucks to its customers. Financing such sales to a dealer for its inventory or rental fleet was available through Eaton, Yale and Towne Credit Corporation, a whollyowned subsidiary of plaintiff. The sale to the dealer was consummated and, if it so desired, the dealer obtained financing from the Credit Corporation in the following manner: When the dealer ordered equipment for its inventory, there would be executed on its behalf what was known as a "floor plan chattel mortgage" naming plaintiff as the seller-mortgagee. Under the standard floor plan chattel mortgage, the dealer paid no interest for the first sixty days, and thereafter paid interest at the designated rate. Twenty percent of the purchase price was due and payable in ninety days from the date of the chattel mortgage, thirty percent of said purchase price was due one hundred eighty days from said date and the remaining fifty percent in two hundred seventy days.
When a dealer ordered equipment for its rental fleet, there would be executed on its behalf a "rental fleet chattel mortgage" again naming plaintiff as the seller-mortgagee. Pursuant to the provisions of the rental fleet chattel mortgages, payment of the purchase price was to be made in thirty-six or forty-two consecutive monthly installments, the last of which is referred to as a "balloon" payment. Generally, the monthly payments were in declining amounts for each twelve-month period. Theoretically, the calculation of the amount of the consecutive monthly installments took into consideration the depreciation of the truck from normal use in the rental fleet, so that at any given time the balance due was to equal the fair market value of the forklift truck.
The floor plan and rental fleet mortgages were executed at the time of, or within a few days after, the shipment of the equipment to the dealer, and immediately upon execution of said chattel mortgage it was tendered to the Credit Corporation. If the Credit Corporation bought the paper, the dealer was then to remit the required payments to the Credit Corporation.
Under paragraph 3 of the floor plan chattel mortgages, the dealer agreed:
"* * * to report each sale of Equipment promptly to Seller and immediately to hand all cash proceeds and all proceeds in the form of obligations of the retail purchaser and related documents, if any, to Seller, and to hold all proceeds of such sale (whether consisting of cash, obligations, trade-ins or other property) in trust for Seller separate from the funds or other property of Purchaser. At Seller's election, in the event of a sale, Seller may require *440 the Minimum Sales Price of Equipment sold to be paid to Seller in cash."
Paragraph 3 of the rental fleet chattel mortgages contained an identical provision and in addition provided:
"As further security for the payment of the sums specified in Paragraph 1 above, Purchaser hereby sells and assigns to Seller (1) all leases which Purchaser may hereafter enter into with respect to Equipment and (2) all moneys and claims for money at any time due under said leases. Purchaser hereby authorizes Seller to collect all moneys at any time due under said leases and, either in its own name or in the name of Purchaser, to exercise the rights of Purchaser under said leases, by terminating any one or more of them, or in any other manner, and to take any and all proceedings Purchaser might otherwise take thereunder."
Furthermore, paragraph 5 of the said chattel mortgage contained a provision that if the dealer
"* * * shall fail to make any payment or otherwise breach any provision hereof * * * the entire unpaid balance of the Total Price, together with any other amount for which Purchaser shall have become obligated hereunder, shall without notice or demand become due and payable forthwith at Seller's option. Upon Seller's demand, Purchaser will surrender possession of Equipment and Seller may enter any premises where Equipment may be and take immediate possession thereof and remove it without notice, demand or legal process * * *"
Said chattel mortgages further provided that all the rights and remedies provided for therein were cumulative and did not exclude any remedies provided for by law.
Plaintiff's Yale Division sold parts to dealers on open account with payment to be made at the end of the month succeeding the month in which purchases were made. On occasion, plaintiff also sold its dealers industrial trucks on open account.
Within a few weeks after commencing business, Sherman Industrial became delinquent in making payment on its open accounts with plaintiff. Shortly thereafter, it became delinquent in making the payments due under floor plan and rental fleet chattel mortgages. These delinquencies continued throughout the two-year period. Also, Sherman Industrial sold and collected the purchase price for forklift trucks subject to chattel mortgages, and collected accounts which it had assigned to plaintiff, all without making the required payments to plaintiff.
On February 28, 1968, plaintiff served on defendant Sherman Industrial a notice, dated February 26, 1968, immediately terminating the franchise in accordance with paragraph 12 of the Dealer Selling Agreement.
On March 15, 1968, plaintiff repossessed substantially all of defendant Sherman Industrial's inventory of Yale industrial trucks, parts, accessories and attachments, and removed the same to a public warehouse in St. Louis County. Said repossession allegedly was made pursuant to the various chattel mortgages and other security agreements covering the repossessed equipment. Defendant Sherman Industrial at the time of the repossession was allegedly in default on all of these chattel mortgages and other security agreements.
In March of 1968, allegedly pursuant to authority granted to it in the various chattel mortgages and security agreements, plaintiff sent notices to defendant Sherman Industrial's rental customers informing such customers that henceforth rental payments were to be made to plaintiff. Subsequently, plaintiff did collect some of these rental payments and credited defendant Sherman Industrial's account with the amount of said collections.
On May 8, 1968, plaintiff caused a public auction to be held at which the repossessed equipment was sold.
In Count I of its complaint, the plaintiff seeks a general judgment *441 against Sherman Industrial in the amount of $167,344.89. Sherman Industrial has raised the defense of breach of the contract between the parties and fraud or misrepresentation. Its argument is that the contract included more than the writing executed by the parties. It was composed of all of the negotiations between the parties and the representations made by plaintiff to the defendant. It is the opinion of the Court that the defendant has not sustained its burden of proof on this point. There is nothing in the record to indicate that the parties ever intended the contract to be anything other than the writing entitled "Dealer Selling Agreement" executed by them. The defendant does not rely on a specific provision of that contract as the basis for its allegation of breach of contract. The general allegation of breach of contract, unsupported by evidence, is not sufficient to establish a defense to this count. Likewise, with the defense of fraud or misrepresentation, defendant alleges this occurred primarily in plaintiff's promises of expected profits, amount of financing available to the defendant, and amount of capital that Sherman and Weltmer would be required to furnish. The evidence showed that Weltmer and Sherman were both experienced businessmen, and that Sherman had considerable experience in management with the plaintiff's Kansas City dealer. The pro forma accounting statements furnished by plaintiff during the negotiations estimated lower gross revenue and profits than those prepared by Sherman and Weltmer. The evidence also showed that Sherman Industrial expended more of its original capital on used equipment to be used in the rental operations than was recommended by the plaintiff, thereby impairing its capital from the outset. Therefore, it is the opinion of the Court that the defendant has failed to sustain its burden of establishing fraud or misrepresentation.
Plaintiff's Count I is divided into several claims. The first involves the balance due after the foreclosure of various chattel mortgages. In its answer to plaintiff's request for admissions, the defendant admitted, while denying that the amount was actually owed, the accuracy of statement that the balance due on some forty items sold was $138,506.99. These items brought $79,240.00 at the foreclosure sale. After applying credits due the defendant, the deficit is $24,507.97. It is the opinion of the Court that this amount is owed to the plaintiff and judgment will be entered in that amount. An additional amount of $4,851.30 which was the cost of the foreclosure sale will be added to the judgment.
Count I also includes a claim for $31,919.93 that arose out of the sale of certain forklift trucks by Sherman Industrial. These trucks were subject to chattel mortgages held by the plaintiff. Sherman Industrial admits that the merchandise was purchased. It denies plaintiff's lien and the amount owed on this merchandise. It is the opinion of the Court that plaintiff held a lien on these items and that the defendant sold the items and failed to turn over the proceeds to the plaintiff as required by the lien. The evidence shows that the defendant received $31,919.93 from the purchasers of these items. This amount should have been turned over to the plaintiff. Therefore, $31,919.93 will be added to the judgment on Count I.
Plaintiff also alleges that the defendant is indebted to it in the amount of $14,082.80 from the sale of merchandise to the defendant. The defendant then assigned the accounts receivable to plaintiff, but failed to pay plaintiff the proceeds upon resale of the merchandise. The defendant admits the purchase, but denies the assignment and that the proceeds were not turned over to plaintiff. The assignment was introduced into evidence and there is nothing in the record to indicate that plaintiff ever received any proceeds from these sales. Therefore, an additional amount of $14,082.80 will be added to the judgment in Count I.
Count I contains a claim for $55,104.30 ($63,164.13 less credits of $8,059.83) incurred by defendant from the purchase of merchandise from plaintiff and other *442 obligations to plaintiff. Defendant admits the description of the items involved, and the date and amount of sale. It denies that any obligation was incurred and that nothing had been paid plaintiff. It is the opinion of the Court that the defendant incurred the obligation and that no part of said amount has been paid plaintiff, and $55,104.30 will be added to the judgment on this count.
The final claim for damages under this count is on a promissory note for $36,000.00. The defendant admits execution. The plaintiff admits that two payments have been made, leaving a principal balance of $30,983.90. The Court will add that amount to the judgment along with interest on the sum from September 25, 1968, at the rate of six percent, or $1,084.44, and attorney's fees in the amount of $4,810.25, for a total of $36,878.59. The Court will enter judgment in favor of plaintiff and against defendant Sherman Industrial in the amount of $167,344.89 on Count I.
Count II of plaintiff's complaint involves the seizure of certain forklift trucks by the United States Marshal. Plaintiff has abandoned its claim for damages under that count. The legality of the seizure is the subject of Count I of defendant's counterclaims and will be discussed in that connection later.
Count III of plaintiff's complaint is against the individual defendant Weltmer on a personal guarantee of the obligation of Sherman Industrial signed by Weltmer, given in consideration of Sherman Industrial being named the St. Louis dealer of plaintiff. The guarantee was for $110,000.00, plus interest at six percent ($9,900.00), and attorneys' fees of $16,500.00, for a total of $136,400.00. Weltmer admits execution of the guarantee, but denies liability on the basis of failure of consideration and fraud. Both of these defenses must fail for lack of proof. The alleged failure of consideration is plaintiff's termination of the dealer contract before the expiration of its five-year term and refusal of plaintiff to furnish the defendant Sherman Industrial financial support. It is the opinion of the Court that plaintiff could and did terminate the contract before the expiration of the five-year term under paragraph 12 of the Dealer Selling Agreement. It is the opinion of the Court that Weltmer has failed to show that the guarantee was given in consideration of plaintiff giving Sherman Industrial financial support in any set ration or amount and, further, the evidence failed to show that plaintiff did not give Sherman Industrial adequate financial support. As to the allegation of fraud, the evidence and documents concerning the negotiations leading up to the contract do not establish fraud. Mr. Weltmer and Mr. Sherman were men of considerable business experience. There is no evidence to show that the data provided by plaintiff and plaintiff's representatives were inaccurate. Finally, there is no evidence in the case of a knowing or willful misrepresentation. Therefore, it is the opinion of the Court that the guarantee is valid and the Court will enter a judgment on Count III on the guarantee in the amount of $110,000.00, plus interest of $9,900.00, and attorneys' fees of $16,500.00, for a total of $136,400.00.
In Count IV, the plaintiff claims damages from the individual defendants, Sherman, Weltmer, and Kreamer. The corporate charter of Sherman Industrial was forfeited by the State of Missouri on January 1, 1968, and reinstated in June of 1968. On February 28, 1968, plaintiff terminated the contract with Sherman Industrial. This count is based upon § 351.525, R.S.Mo.1959 (Supp.1969). The plaintiff alleges that the defendants' operation of the business of Sherman Industrial during the period when its charter was in forfeiture makes them personally liable for the obligations of the business. It is true that the statute makes the officers and directors at the time of forfeiture statutory trustees and gives them the duty of winding up the business of the corporation. Here, the officers and directors obviously began to wind up after the termination of February *443 28, 1968. Thus, January and February of 1968 is the only crucial time. If the trustees had begun to wind up, it would have taken several months to do so. The items involved in Count IV were items that would be used to maintain business during liquidation. The statute does not require immediate liquidation on the day the charter is forfeited. Here, there is no showing that the trustees did not use the merchandise or money received for other than the best purposes of the corporation. The Court has already granted plaintiff judgment against the corporation for several of the items involved in this count. Therefore, the Court will enter judgment in favor of the individual defendants on Count IV and against the plaintiff.
Defendant Sherman Industrial has filed a counterclaim in nine counts, some of which have been abandoned. In Count I, it prays for $20,000.00 damages for the wrongful seizure of several forklift trucks by the United States Marshal pursuant to an order of this Court. The original order called for the seizure of eight trucks, but only two of the trucks were ever seized. Of these two trucks, one was sold at the auction and one was delivered to the purchaser. Plaintiff received the proceeds from both and credited defendant's account. It is the opinion of the Court that the seizure was lawful and will enter a judgment in favor of plaintiff and against defendant on Count I of defendant's counterclaim.
The second count of the defendant's counterclaim is based upon an alleged breach of the franchise agreement by the plaintiff. These same allegations were raised as defenses to the plaintiff's complaint. Those defenses were breach of contract and fraud or misrepresentation. It was the opinion of the Court that the defendant failed to prove these defenses and for the reasons discussed at that point, it is the opinion of the Court that defendant has failed to prove this counterclaim. There is nothing in the record to indicate that the contract was terminated for any reason other than Sherman Industrial's failure to meet its financial obligations to plaintiff. Therefore, the Court will enter a judgment in favor of plaintiff and against the defendant on Count II of the counterclaim.
Defendant Sherman Industrial has abandoned its claim for damages under Count III of its counterclaim. The Court will enter judgment against the defendant and in favor of the plaintiff on this count.
Counts IV, V, and VI of defendant's counterclaim involve allegations of violations of antitrust laws of the United States. Count IV charges a violation of section 3 of the Clayton Act, 15 U.S.C. § 14. Count V charges a violation of section 1 of the Sherman Act, 15 U.S.C. § 1; and Count VI alleges a violation of section 2 of the Sherman Act, 15 U.S.C. § 2. The defendant offered no proof of violation of section 3 of the Clayton Act, 15 U.S.C. § 14. According to defendant's post-trial memorandum, defendant has changed its theory under this count to a violation of Robinson-Patman Act, 15 U.S.C. § 13. This alleged violation was not pleaded and was mentioned for the first time after trial. Disregarding the problems of amending the pleadings, it is the opinion of the Court that the evidence will not support a charge of violating either of the above-mentioned sections. There is no evidence to show that plaintiff made capital requirements on defendant different from the requirements generally made of its dealers. The Court will enter judgment for the plaintiff on Count IV.
Under Counts V and VI of their first amended counterclaim, defendants allege a combination and conspiracy in restraint of trade and to create a monopoly and an attempt to create a monopoly. It is the opinion of this Court that the evidence failed to show a conspiracy or combination between plaintiff and the Credit Corporation to restrain trade or create a monopoly. Defendant's evidence fails to show that plaintiff possessed, sought, or attempted to acquire monopoly power in a relevant market area. There is no evidence that plaintiff tried to enforce *444 territorial sales restrictions upon the defendant. Therefore, the Court will enter judgment in favor of plaintiff on Counts V and VI.
Count VII of defendant's counterclaim is for breach of contract. The contract involved is one allegedly made between plaintiff and Sherman Industrial for the purchase of the assets of Sherman Industrial. The plaintiff denies acceptance of the defendant's offer and formation of the contract. In March 1968, after the termination of Sherman Industrial as the plaintiff's St. Louis dealer, agents of the plaintiff met with Sherman, Weltmer, and Kreamer in St. Louis to discuss the purchase of the assets of Sherman Industrial by plaintiff. The parties were near agreement and on March 7, 1968, the defendant made a formal offer in a telegram signed by James Sherman, President, Sherman Industrial, and letter to the plaintiff's main office in Philadelphia. Plaintiff's agents in St. Louis allegedly told the officers of defendant that they could consider the offer to be accepted if it was not rejected by Friday, March 8th. Sherman then resigned as president of Sherman Industrial because he was to be in the employment of plaintiff while it operated the St. Louis dealership until a replacement could be found. On March 8th, the plaintiff sent a telegram rejecting defendant's offer to James Sherman at Sherman Industrial in St. Louis. The telegram was received by Sherman in St. Louis. It is the opinion of the Court that the defendant's offer was not accepted and that no contract was formed. The Court will enter judgment for plaintiff on this count.
Count VIII of Sherman Industrial's counterclaim alleges that plaintiff's foreclosure sale was not conducted in good faith and in a commercially reasonable manner.
The evidence showed that commencing ten days prior to the auction, two sets of advertisements were run in the St. Louis newspapers and advertisements of the auction were also placed in newspapers in Kansas City, Missouri, and Chicago, Illinois. In addition, the auctioneer employed by plaintiff prepared circulars concerning the sale and mailed them to numerous persons whom the auctioneer by virtue of his experience believed to be interested.
Plaintiff retained an experienced auctioneer to conduct the auction sale at the same public warehouse to which the property had been taken when repossessed by plaintiff.
Prior to the auction sale, each of the trucks to be sold was catalogued and tagged by the auctioneer. At his request, the trucks were moved to a different part of the warehouse so as to be more readily accessible. On the two days immediately preceding the sale, the trucks and parts were, as indicated in the advertisements, available for inspection by interested purchasers and some of them came to the warehouse on those dates and inspected the equipment.
There were approximately fifty-five bidders registered at the auction, including plaintiff and defendants. The auction lasted in excess of two and one-half hours. The industrial trucks were auctioned individually and the auctioneer suggested the opening bid. The auctioneer was able to move in and about the truck as he auctioned each piece of equipment using a loudspeaker. Whenever possible, the motor of a forklift truck was started and the forklift operated before a truck was sold. Plaintiff bid on and purchased some of the industrial trucks.
The trucks and parts were offered for sale by plaintiff in exactly the same condition in which they had been repossessed from defendants. Except for some of the parts, all of the items sold at the auction were used equipment.
There was no evidence of the physical condition of the trucks on the date of sale, except that defendants complain that some were in need of repair which was not performed, and only inconclusive evidence of the value of the trucks on said date.
*445 A very substantial number of parts, many of which appeared to be crated and boxed in their original cartons, were also offered for sale. The inventory list of parts prepared by plaintiff's personnel in March 1968 was sent to defendants prior to the sale and a copy was physically present at the public warehouse in the area where the parts were exhibited both on the inspection days and on the day of sale. The parts were not separated into different lots by the auctioneer prior to the sale. The parts were offered in bulk, and plaintiff bid them in at $88,000.00, which was approximately the cost of the parts to defendants.
The price at which the parts were sold at foreclosure approximates the price at which defendant had offered to sell the parts to plaintiff in its proposal of March 7, 1968. Plaintiff was entitled to sell the repossessed equipment at public auction in the condition in which it was repossessed, and it had no obligation to repair or repaint. Plaintiff had the right to sell the equipment being auctioned either in bulk, by lot, or in parcels, and did not violate any obligation it owed to Sherman Industrial by auctioning the parts and accessories in bulk. Plaintiff had the right to attend such auction and bid on such of the equipment as it desired to purchase. The defendant did not sustain its burden of showing that the auction sale of May 8, 1968, was not conducted in good faith or in a commercially reasonable manner or that it was damaged by the sale as held. The Court will enter judgment for the plaintiff on Count VIII of the counterclaim.
In Count IX the defendant Sherman Industrial alleges that the plaintiff breached its fiduciary duty toward that defendant. The Court has been cited no authority that indicates the existence of a franchisor-franchisee relationship places the franchisor in the position of a fiduciary. The record shows no special circumstances that would require this Court to impose a fiduciary relationship where it does not normally exist. It is the opinion of the Court that the defendant has not proven the existence of a fiduciary relationship, and the Court will enter judgment for the plaintiff on this count.
The final claim before the Court is the counterclaim of the defendant Weltmer. The counterclaim contains the same allegations of fraud and misrepresentation as Weltmer's answer and affirmative defense to Count III of plaintiff's complaint. At that point, the Court held Weltmer failed to prove these same allegations. It is the opinion of the Court that he has also failed to prove these allegations as the basis for a claim for relief and will enter judgment for plaintiff and against Weltmer on his counterclaim.
The foregoing memorandum is adopted as the Court's findings of fact and conclusions of law.