Russell PERRY et al., Plaintiffs,

v.

AMERADA HESS CORPORATION, a Delaware Corporation, Defendant.

Civ. A. No. 18384.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 2, 1977.

Peyton S. Hawes, Jr., Cofer, Beauchamp & Hawes, Atlanta, Ga., for plaintiffs.

David R. Aufdenspring and Harvey D. Harkness, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant.

ORDER

MOYE, District Judge.

Plaintiffs Perry, Brown, Jordan, Keefe, Stroppel, Stump and Jowanna bring this action under sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for injunctive relief and treble damages resulting from alleged violations of the federal antitrust laws by defendant Amerada Hess Corporation (Hess). The case is presently before the Court on the interim recommendations of United States Magistrate Joel M. Feldman. The findings in the first report were as follows: (1) plaintiff Jordan's motion for a preliminary injunction in *Amerada Hess Corp. v. Jordan*, Civ.No. 74–491, Middle District of Florida, should be dismissed as moot; (2) injunctive relief should be denied in *Amerada Hess Corp. v. Keefe*, Civ.No. 73–8516–8, Circuit Court of Pinellas County, Florida; (3) Count III of the complaint should be dismissed inasmuch as the requirement that Hess stations remain open 24 hours each day is not an anti-competitive requirement; and (4) Count V of the complaint should be dismissed as it fails to state a claim for relief under the Sherman Act. The second interim recommendation suggests the following: (1) the defendant's motions to dismiss Counts IV, VII and IX of the complaint should be denied; (2) that plaintiffs Keefe, Stroppel and Jordan should be granted leave to amend the complaint by adding Counts X and XI; (3) that defendant's motion for a protective order should be denied; and (4) that plaintiffs' motion for class certification should be conditionally granted for the remainder of the discovery period.

The recommendations will be considered seriatim. The first two recommendations in the Magistrate's report of September 27, 1976, are procedurally proper and are hereby ORDERED ADOPTED.

The Magistrate recommended that Count III of the complaint be dismissed

prior to the issuance by this Court of an order in *Gordon v. Crown Central Petroleum Corporation*, 423 F.Supp. 58 (N.D.Ga. 1976) finding that *Crown Central* did not violate the Sherman Act by requiring that its service station franchisees maintain 24-hour operation in their stations. That order is dispositive of Count III of the complaint in the instant case and the defendant's motion to dismiss Count III is hereby ORDERED GRANTED.

■ Count V of the complaint alleges that Hess has violated section one of the Sherman Act by regulating, with respect to each of its franchisees, the amount each shall spend on employment, appearance of employees, and sex of employees. Plaintiff states that the case of *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), controls the issue here presented in that it prevents a manufacturer from exerting control over "conditions of resale" once it has relinquished title to a commodity.

Defendant argues that a trademark owner has the right to require a user of the trademark to maintain certain standards of quality, cleanliness, hours of service and other items which are necessary for the uniformity of chain outlets. Defendant states that the Sherman Act is not to be applied except in cases where some form of restraint on commercial competition in marketing exists, and alleges that no such restraint results from Hess's policies.

The Court agrees with the Magistrate that Count V of the complaint fails to state a claim under the Sherman Act. The reading of *Schwinn, supra*, which is urged by the plaintiffs is overbroad. That case decided only that where franchisees bore the risk of loss of goods purchased from the manufacturer, the manufacturer could not legally restrict the geographical location of resale or the persons to whom products could be resold. To read the case otherwise would be to place untenable restrictions on the franchising system as a whole.

In *Bay City-Abrahams Bros., Inc. v. Estee Lauder, Inc.*, 375 F.Supp. 1206 (S.D.N.Y. 1974), the Court rejected the plaintiff's argument that a refusal to deal with plaintiff because of the termination of an employee was an unreasonable restraint of trade. Plaintiff attempts to distinguish this case as presenting a much narrower issue than the case at bar in that Hess's policies relate to all employees. The Court finds, however, that in this case as well as in *Bay City* the defendant's regulations regarding employment policies do not place any unreasonable restraints on trade; therefore, Count V of the complaint is hereby ORDERED DISMISSED.

The Magistrate recommended in his second report that Hess's motion to dismiss Count IV of the complaint should be denied. Count IV alleges that Hess violated a fiduciary duty to Perry when it enforced the requirement that the franchisee operate his station 24 hours per day as to Perry while other franchisees had permission to operate only 18 hours per day.

■ In order to dismiss this count of the complaint, the Court must find that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126 (5th Cir. 1959); 2A J. Moore, *Federal Practice* ¶ 12.08, at 2274. One Court has recognized that

> where a fiduciary relationship does not exist as a matter of law, the burden of proving facts from which such a relationship arises is upon the person seeking to establish the relationship, and the proof must be clear, convincing, and so strong as to lead to but one possible conclusion.

*Lawrence v. Muter Co.*, 171 F.2d 380, 385 (7th Cir. 1949), citing *Vargas v. Esquire*, 166 F.2d 651, 653 (7th Cir. 1948). In *Mobil Oil Corp. v. Rubenfeld*, 72 Misc.2d 392, 339 N.Y. S.2d 623, aff'd 77 Misc.2d 962, 357 N.Y.S.2d 589 (1972), the Court found that the relationship between an oil company and its franchisee went beyond that of lessor-lessee and that the oil company had a fiduciary obligation to the franchisee resulting from the company's expertise and influence over

the franchisee. Although in *Eaton, Yale & Towne, Inc. v. Sherman Industrial Equipment Co.*, 316 F.Supp. 435 (E.D.Mo.1970), the Court reached the opposite result, the present motion to dismiss must be denied inasmuch as it is possible that the plaintiff may present facts which will warrant a finding that a fiduciary relationship did exist and that defendant breached its fiduciary obligation through discriminatory treatment of the plaintiff. The Magistrate's finding as to Count IV is hereby ORDERED ADOPTED.

■ The Magistrate found that Count VII of the complaint as amended stated a claim under section one of the Robinson-Patman Act and recommended that defendant's motion to dismiss that count should be denied. The defendant objects to this recommendation based on *Gulf Oil Corporation v. Copp Paving Co.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), and two cases cited therein, *Hiram Walker, Inc. v. A. & S. Tropical, Inc.*, 407 F.2d 4 (5th Cir. 1969), *cert. denied*, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969), and *Belliston v. Texaco, Inc.*, 455 F.2d 175 (10th Cir. 1972), *cert. denied*, 408 U.S. 928, 92 S.Ct. 2494, 33 L.Ed.2d 341 (1972). In all the cited cases the courts found that the sales in question did not violate the Robinson-Patman Act because the sales did not take place "in commerce." The definition of "in commerce" for purposes of the Robinson-Patman Act is construed more narrowly than in Sherman Act cases; where price discrimination under the Robinson-Patman Act is alleged, the plaintiff must show that a seller discriminated in separate sales of the same product and that one of the discriminatory sales took place across state lines. In *Belliston, supra*, Texaco produced crude oil in Colorado and sold it to the American Oil Company; American transported the crude oil to Utah and refined it there, then resold it to Texaco which sold it to Texaco dealers in the Salt Lake City area. The Court found that the sales by Texaco to its dealers were completely within Utah and outside the scope of the Robinson-Patman Act. The Court indicated that for a violation to occur, the retailer must receive the product as part of a "continuous interstate haul" and that even temporary storage in an intrastate warehouse might be sufficient to change the character of the sale from interstate to intrastate.

Similarly, in *Hiram Walker, supra*, no Robinson-Patman violation was found where the manufacturer sold liquor to wholesalers in Florida and the wholesalers distributed the product to Florida retailers. The Court found that the manufacturer exercised no control over the conditions of resale and made no sales directly to retailers, and that the alleged discrimination was perpetrated only by the wholesalers in intrastate sales.

Plaintiff directs the Court's attention to *Standard Oil Co. v. Federal Trade Commission*, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1950), and *Bargain Car Wash, Inc. v. Standard Oil Co. and the American Oil Co.*, 466 F.2d 1163 (7th Cir. 1972), in which sales of gasoline refined outside the state of retail sale, shipped into the state of sale and stored temporarily prior to sale to the retailer were held to be sales within the scope of the Robinson-Patman Act. The temporary storage of the gasoline in its refined state was held not to interrupt the "flow of commerce" or to detract from the primarily interstate nature of the transaction.

■ The Court will deny the motion to dismiss. Although the authority cited by defendant is persuasive, the Court finds that the plaintiffs may be able to prove facts which support their theory that the gasoline in question here is continually in commerce from the time it leaves the refineries located outside Georgia and Florida until it is sold by the plaintiffs to consumers in those states. The removal of a major element of the plaintiffs' case at this time would be premature. Accordingly, the defendant's motion to dismiss Count VII of the complaint is hereby ORDERED DENIED.

■ The Magistrate found that Count IX of the complaint was not subject to dismissal under Fed.R.Civ.P. 12(b)(6) because termination of the plaintiffs Jowanna and

Stump's lease agreements together with their franchise and sales agreements constituted illegal refusals to deal involving a "contract, combination, or conspiracy" sufficient to provide jurisdiction under section one of the Sherman Act.

Hess argues that the Special Master's recommendation is in error in that the allegation in Count IX is merely of a unilateral refusal to deal without any third-party involvement. Hess asserts that to find a Sherman Act violation in this case would be erroneous under *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1910), and *United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), and would provide a terminated franchisee with a cause of action under the antitrust laws no matter what clause of his contract was violated.

Defendant's argument is fallacious. The plaintiffs' cause of action rests not only on the fact of a contract and lease agreement but also on the allegation that an agreement to fix prices existed by virtue of the 30-day termination clause in the standard lease which was allegedly used as leverage to coerce compliance with Hess's suggested retail prices.

In *Parke-Davis, supra*, the Court stated that a Sherman Act violation was present where a seller secured compliance with suggested retail prices by means other than the "mere announcement of his policy and the simple refusal to deal . . . ." 362 U.S. at 44, 80 S.Ct. at 512. A 1972 decision discussed *Parke-Davis* as follows:

> It is obvious that the . ·. . thrust of [Parke-Davis] is that the reseller or wholesaler must be free to make his own independent pricing determination . and that any trespass on his independence is violative of section 1 of the Sherman Act, whether the conduct is characterized as a contract, combination or conspiracy. It follows from such a premise that a practice of conditioning a price reduction on the acquiescence or cooperation of the recipient to reduce its price can only be viewed as imposing restrictions on the reseller's freedom of decision and, as

such, is an unlawful price fixing combination. Such a practice, while admittedly less exacting than the provisions of a formal contract, may, nevertheless, employ other means to a sufficiently high degree so that acceptance by the reseller is affected.

*Pearl Brewing Co. v. Anheuser Busch, Inc.,* 339 F.Supp. 945, 955 (S.D.Tex.1972).

Defendant argues most strenuously that without an agreement between Hess and some third party the plaintiff states no cause of action under the Sherman Act. Defendant presents no case setting forth this specific holding; further, defendant fails to counteract the statement in *Sahm v. V-1 Oil Co.*, 402 F.2d 69, 71 (10th Cir. 1968), that where a resale price agreement

> is tied to and enforced by related agreements between the parties, and where the related agreements are used by one of the parties in his attempt to have the illegal agreement reinstated, an agreement for purposes of § 1 of the Sherman Act is established and continued, even though the resale price maintenance agreement itself is repudiated by the injured party prior to the conduct of the other party which causes the injury.

The facts in *Sahm* are very closely related to those in this case, though defendant attempts to distinguish them by showing that the plaintiffs' lease agreements provide for the offering of fewer extra services than those in *Sahm*. The important facts for purposes of the *Sahm* decision are that the plaintiffs have alleged both an illegal agreement to fix prices and agreements containing 30-day termination clauses which are used to coerce compliance with defendant's pricing arrangement. The argument plaintiff presents in *Sahm, supra,* is bolstered further by the statement in *Albrecht v. Herald Co.*, 390 U.S. 145, 150 n.6, 88 S.Ct. 869, 872, 19 L.Ed.2d 998, that the petitioner in that case could assert a violation of the Sherman Act based on an agreement between the respondent and himself "as of the day he unwillingly complied with respondent's advertised price." The terminated plaintiffs in this case are alleging

harm resulting from maintenance of respondent's suggested prices, coercion to adhere to those prices, and defendant's refusal to deal. Under *Sahm*, with support from *Albrecht*, the plaintiffs' Count IX presents a claim which may be sustained upon a showing of the necessary facts. The defendant's motion to dismiss is accordingly ORDERED DENIED.

■ Inasmuch as the Court has refused to dismiss Count IX of the complaint, leave to amend and add Count X, which states a cause of action substantially identical to that presented in Count IX, must be granted. Defendant objects to the recommendation that leave be granted on the bases that the motion is not timely, that substantial harm to defendant will result, and that the pleadings would be subject to summary dismissal. The latter argument is now gutted. As to the first, the plaintiffs in question were terminated in January, February, and May 1975 and filed their motion to amend in May 1975. The motion was timely filed and will not be dismissed because of delay. Defendant's final argument is that it will suffer substantial harm in that further time and expense will be necessary for discovery and resolution of the case will be delayed. Inasmuch as the issue involved in Count X is identical to that in Count IX and defendant has knowledge of the facts surrounding the terminations in question, the burden of discovery of the additional plaintiffs will be slight and delay of further pretrial proceedings should be insubstantial. Accordingly, the motion for leave to amend and add Count X is hereby ORDERED GRANTED.

■ Defendant objects to the Magistrate's recommendation that plaintiff be granted leave to amend and add Count XI asserting that the claim for return of money allegedly owed plaintiff under the terms of the lease is a state claim unrelated to the federal claims presented and would be subject to summary dismissal under Fed.R. Civ.P. 12(b)(1). Under *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a court may exercise jurisdiction over state claims presented if the state claims and federal claims arise from a "common nucleus of operative fact." 383 U.S. at 725, 86 S.Ct. 1130. The court, however, is not *bound* to exercise pendent jurisdiction in all such cases: "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . ." 383 U.S. at 726, 86 S.Ct. at 1139. *Gibbs* stresses that state claims should be retained especially when they relate to questions of federal policy; in *Hagans v. Levine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Court further stressed that a state claim should be retained if it presented constitutional issues, even though it might be labeled a "statutory" claim. None of the special factors mitigating in favor of retention is present here. Whether or not the state and federal claims even arise from a "common nucleus of operative fact" is questionable; clearly evidence wholly unrelated to the evidence supporting plaintiffs' antitrust claims would need to be presented. In this unwieldy suit, the Court is of the opinion that the interests of judicial economy would be served by severance of the state claim. Accordingly, the plaintiff's motion for leave to amend and add Count XI is hereby ORDERED DENIED.

The final issue to be determined is whether or not the Magistrate's recommendation that the class of all present and former Hess franchisees be conditionally certified for the duration of the discovery period should be adopted. The parties have submitted voluminous briefs on the issue and a hearing was held on December 29, 1976, at which this specific issue was argued. After thorough consideration of all the briefs and the arguments presented at the hearing, the Court finds that the class should not be certified for reasons to be presented below.

■ Plaintiffs seek to bring this suit under Fed.R.Civ.P. 23(b)(3); the requirements for such a suit are that the conditions of numerosity, typicality of claims and defenses, and adequacy of representation

presented in Rule 23(a)(1)–(4) are met, that questions common to the members of the class predominate over individual questions, and that the class action be a superior method of adjudication over suits brought by the individual plaintiffs. *See generally* J. Moore, *Federal Practice* ¶¶ 23.04–23.07, 23.45.

Defendant does not contest the numerosity or typicality of the plaintiffs' claims. Hess does, however, contend that the named plaintiffs do not adequately represent the plaintiff class under Rule 23(a)(4) inasmuch as only one plaintiff is a current Hess dealer and that status is a result of court injunction, leaving current dealers essentially unrepresented, and the legal fees of the named plaintiffs are being paid by the Georgia Association of Petroleum Refiners, an organization whose interests are not necessarily compatible with those of the unnamed class members. Although the Court is of the opinion that Hess's arguments in this respect may have some merit, the decision whether or not to certify the class rests on the criteria enumerated in Rule 23(b)(3), the predominance of common issues over individual issues and the superiority of class adjudication.

The issues which the plaintiffs sought to have certified for class determination were the following: (1) price-fixing; (2) hours of operation; (3) control of employment practices; (4) tie-ins and exclusive dealing; and (5) price discrimination. The counts of the complaint alleging illegal control of hours of operation and employment practices have been dismissed, rendering moot the motion for certification as to those issues.

Plaintiff urges that as to the issue of liability in the remaining antitrust claims, a class action is the appropriate vehicle to show the existence of an "unremitting company policy" of price-fixing, tying, and price discrimination. Plaintiff admits that any resulting damage will be required to be proved by each individual and accordingly urges that the trial be bifurcated, with liability being tried in part one, the class action, and individual damages being shown in part two. Plaintiffs point to *Herrmann*

*v. Atlantic Richfield Co.*, 65 F.R.D. 585 (1975) and *In re Clark Oil and Refining Corp.*, 1974–1 Trade Cas. ¶ 74,880, as cases in which an allegation of an "overall pattern" of dealing by an oil company was sufficient for the Court to certify a class for trial of the issue of liability.

Hess's primary argument is that as to each of the three alleged antitrust violations—price-fixing, tying, and price discrimination—which plaintiffs urge are suitable for class certification, individual issues predominate over issues common to the class. Defendant contends that section 4 of the Clayton Act requires that the fact of injury caused by an alleged antitrust violation must be proved before any liability will attach. Plaintiff counters with the argument that injury to the entire class may be inferred once the company violations are shown and the named plaintiffs have established resulting injury in fact. No cases are cited, however, in support of this argument.

Under section 4 of the Clayton Act, 15 U.S.C. § 15, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . ." The elements necessary for recovery under this statute are: (1) a violation of the antitrust laws; (2) the fact of damage causally linked to the violation; and (3) some indication of the amount of damage. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1320 (5th Cir. 1976); *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16 (5th Cir. 1974). Plaintiffs apparently argue that in a bifurcated trial liability could be established on the basis of a violation alone, and that each individual franchisee could come in and prove injury and damages in the second stage of the trial. The plaintiffs misunderstand the requirements of the Clayton Act. In *Response, supra*, the Court stated:

> While we recognize that a finding of "liability" in phase I of a bifurcated trial is interlocutory, . . . this in no way diminishes the requirement that a plaintiff show some evidence that the violation cause him injury before a defendant is

found "liable." Put in other terms, if the trial is bifurcated between liability and damages, there must be some evidence showing a causal link between the violation and alleged injury in phase I, before a plaintiff may enter phase II.

537 F.2d at 1321.

Similar reasoning dictated the denial of class certification in *Shumate & Co. v. National Ass'n. of Securities Dealers, Inc.,* 509 F.2d 147 (5th Cir. 1975). The cause of action in that case was conspiracy in restraint of trade in violation of the Sherman Act. Concerning injury to members of the class, the Court held:

> This case is different from one where liability can be shown as to all class members, with only the amount of damage to be determined as to each. In this antitrust case the proof of injury to business or property of each class member is critical for the determination of defendants' liability to any individual. The district court was within its discretion in deciding that common questions of fact do not predominate.

509 F.2d at 155.

Several courts recently have refused to certify a class where franchisees have alleged price-fixing or tying on the grounds that coercion, an essential element of both claims, would need to be proved as to each individual plaintiff. *Ungar v. Dunkin Donuts of America, Inc.,* 531 F.2d 1211, 1224 (3d Cir. 1976); *Yanai v. Frito Lay, Inc.,* 61 F.R.D. 349 (N.D.Ohio 1973); *Abercrombie v. Lum's, Inc.,* 345 F.Supp. 387, 392 (S.D.Fla. 1972); *Lah v. Shell Oil Co.,* 50 F.R.D. 198 (S.D.Ohio 1970).

The district court in *Ungar, supra,* had certified the class of franchisees on the theory that per se illegal tying could be proved by a showing of: (1) the economically dominant position of the franchisor over the franchisees; (2) offering and selling of more than one product by the franchiser to the franchisees; and (3) a franchisor's policy to persuade the franchisees to purchase its products. In reversing the certification, the court of appeals stated:

> It is difficult to conceive of a franchisor-franchisee relationship in which [the above requirements] could not be established. The very nature of the franchise institution contemplates the presence of a comparatively strong financial entity—the franchisor—that makes available to a relatively weaker financial entity—the franchisee—an attractive business opportunity at a relatively modest initial investment. One of the primary attractions of the franchise system to franchisees is that the franchisor offers a package deal including many, if not all, of the items necessary to operate the business. And we cannot imagine any seller that would not have a firm and resolutely enforced policy to persuade buyers to buy what is offered for sale. Thus, inherent in any franchise arrangement are the factors the district court considered sufficient to establish prima facie liability, in class action form, for a tie-in.

531 F.2d at 1224–25. The Court also rejected the district court's finding that illegal use of economic power could be inferred if plaintiffs showed evidence of acceptance by a large number of franchisees of a "burdensome or uneconomic tie." 531 F.2d at 1225, citing *Ungar v. Dunkin Donuts of America, Inc.,* 68 F.R.D. 65, 115 (E.D.Pa.1975).

The holding in *Ungar* that coercion is a necessary element of an illegal tie was specifically adopted by the Fifth Circuit in *Response of Carolina, Inc., v. Leasco Response, Inc., supra,* 537 F.2d at 1327. This Court is bound by that holding; inasmuch as the element of coercion affects both the tying allegation and the resale price-fixing allegations, the Court finds that individual proof will be necessary on both of these issues. Further, the allegation of discriminatory pricing will necessarily require proof of comparative price differences as to individual plaintiffs within particular geographic zones, proof which is obviously not suitable to a class presentation.

The Court is not persuaded by the plaintiffs' citation of *Windham v. American Brands, Inc.,* 539 F.2d 1016 (4th Cir. 1976),

reversing the district court's decision not to certify a class alleging a horizontal price-fixing agreement. The Fourth Circuit in that decision markedly revised Rule 23 in stripping the district courts of the discretion to certify or refuse to certify a class whenever an antitrust violation is alleged. The decision conflicts directly with the controlling Fifth Circuit authority, notably *Shumate & Co. v. National Ass'n of Securities Dealers, supra,* which reaffirmed the discretion of the district court explicitly set forth in *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1123 (5th Cir. 1969). This Court finds that as to all the issues presented for certification, individual questions predominate over common questions and class certification would be improper.

 Further, the Court finds that a class action is not the superior method of adjudication in this case. The plaintiffs argue that without class certification many of the unnamed plaintiffs will be unable to assert their causes of action for lack of funds. The treble damage provisions of the antitrust laws are designed to encourage private suits and, where the amount of damage is at all substantial, enable plaintiffs to bear the costs of litigation. Thus the necessity for class action treatment in a suit such as this is lessened. *See Bogosian v. Gulf Oil Corp.,* 62 F.R.D. 124 (E.D.Pa. 1973). Further, the proof as to all of the class issues in this case is extremely complicated and would involve testimony by all class members as to fact of injury; where the class would include franchisees from the entire Eastern seaboard, the extreme complexity of the resulting trial is evident. Finally, as in *Bogosian, supra,* the Court is reluctant to force all the non-named plaintiffs "to either 'opt-out' or be bound by a class action decision that might very substantially effect [*sic*] their future business relationships with [defendant]." 62 F.R.D. 124 at 140.

Plaintiffs in this case argued strenuously at the oral hearing that without certification of the class they would be unable to prove a company policy in regard to price-fixing on tie-ins inasmuch as their access to Hess materials would be limited to documents directly relating to the named plaintiffs. The Court has difficulty with this argument; where the issues alleged concern central company policies, plaintiffs ought to be able to depose top Hess officials and have access to memoranda of company executives which would be indicative of such policies. Plaintiffs have made no showing of attempts to depose Hess executives. Plaintiffs have alleged great recalcitrance on the part of defendant in matters of discovery. The Court expects that resolution of the issue of class certification will expedite discovery in this unwieldy litigation.

The plaintiffs have alleged that a class action is superior to individual actions for reasons of judicial economy. The Court disagrees with this statement. Should plaintiffs prevail on the issue of whether or not Hess has a company wide policy which violates the antitrust laws, Hess would be precluded by collateral estoppel from asserting the contrary in litigation with other franchisees. *See Zdanok v. Glidden Co.,* 327 F.2d 944 (2d Cir. 1964); *State of Maryland ex rel. Gliedman v. Capitol Airlines, Inc.,* 267 F.Supp. 298 (D.Md.1967). Thus, the sole issues remaining would be the fact and extent of damage to the individual plaintiffs, who would have the opportunity to litigate in a home forum.

For all the above reasons, the plaintiffs' motion to have a class certified in this case is hereby ORDERED DENIED.

In summary, the Magistrate's first interim recommendation is hereby ORDERED ADOPTED. As to the Magistrate's second report, the recommendations denying dismissal of Counts IV, VII, IX and X of the complaint are hereby ORDERED ADOPTED. The Court declines to adopt the recommendations denying dismissal of Count XI and certifying the class. Defendant's motion to dismiss Count XI is hereby ORDERED GRANTED. Plaintiffs' motion for class certification is hereby ORDERED DENIED.