Joseph ANAYA et al., Plaintiffs-
Appellants,

v.

The LAS CRUCES SUN NEWS et al.,
Defendants-Appellees.

No. 71–1419.

United States Court of Appeals,
Tenth Circuit.

Feb. 16, 1972.

Anthony F. Avallone, Las Cruces, N. M., for plaintiffs-appellants.

William L. Lutz, Las Cruces, N. M. (E. E. Triviz, Las Cruces, N. M., on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, DOYLE, Circuit Judge, and WINNER, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The several plaintiffs have appealed an adverse judgment in an action alleging violations of §§ 1 and 2 of the Sherman Act and § 2(a) of the Robinson-Patman Act. In the trial court both the plaintiffs and defendants filed motions for summary judgment, and the court granted the defendants' motion.

Defendant Las Cruces News is the principal target in the action, and the individual defendants are distribution contractors who took the places of the plaintiffs as carriers or distributors of the newspaper. At stake is whether the newspaper could terminate the carriers.

The basic legal issue is whether as a matter of law there was anything more than a simple refusal on the part of the newspaper to sell to or deal with the plaintiffs.

The conflict started soon after June 1970, at which time the newspaper was sold and the new publisher, Mr. Bailey Anderson, discovered that the plaintiffs as independent dealers purchased newspapers from the Las Cruces Sun News and delivered these newspapers to approximately 25 percent of the paper's circulation in Las Cruces. On discovering that the paper had no list of subscribers, the new publisher requested all carriers to furnish route lists. At the end of that time, when the plaintiffs had not submitted the route lists in accordance with the request, the paper then refused to do business with them. It was then that the individual defendants were awarded contracts which divided all of the City of Las Cruces into three parts. The plaintiffs were thereby replaced.

It is undisputed that the new publisher had understood that the paper was distributed by traditional paper boys, that is, strong boys with bicycles. Instead the distributors proved to be adult entrepreneurs. Prior to the change the newspaper's practice was to enter into contracts which purported to lease a route list, and it gave the newspaper the right to fix prices wholesale and retail. The prices differed to different carriers from $.003 to $.0394. Not all of the plaintiffs had signed this agreement.

Upon assuming the position of publisher, Anderson stated that the control of the Sun News circulation would thenceforth be assumed and retained by the newspaper. Admittedly the paper publishes national advertising, and some of its circulation involves mailing outside New Mexico, and, although most of the routes were in Las Cruces and the immediate county, some of the carriers delivered daily to Anthony, Texas. It was also admitted that the plaintiffs did not have contract rights as such which prevented cessation of the relationship.

As suggested above, the basic facts are not in dispute, and the only factual differences are in the area of the inferences which the parties draw from these facts. Thus, the plaintiffs contend that the newspaper embarked on a deliberate policy to monopolize the distribution of the paper. They say that the demand for subscriber lists was a mere pretext used to provide an excuse for terminating them and at the same time monopolizing the distribution of the paper. The defendant newspaper, on the other hand, argued that the interest which it was advancing was that of maintaining a high quality distribution system which demanded cooperation from the plaintiffs, cooperation which was not obtained.

The trial court ruled that undisputed facts established that the termination amounted to nothing more than a refusal to deal and further held that the newspaper had a right to change distributors and did not by doing so therefore subject itself to a claim under the Sherman Act. The trial court's further ruling was that the evidence failed to show discriminatory sales in commerce, a necessary prerequisite to a claim under the Robinson-Patman Act.[1]

---

1. The full text of the court's decision is as follows:

"The plaintiffs are former newspaper carriers who were engaged in delivering the Las Cruces Sun News, a daily newspaper published by the corporate defendants, and distributed in and around Las Cruces, New Mexico. The individual defendants are now distributors for the newspaper.

"The plaintiffs formerly had agreements with the paper whereby they purchased newspapers, and then resold them in specified areas in and around Las Cruces. None of their territories were outside of New Mexico. A dispute broke out between the plaintiffs and the newspaper as to the ownership of circulation lists. The newspaper terminated the plaintiffs and hired the other defendants as replacement carriers.

"Plaintiffs now bring this action charging the defendants with current violation of Sections 1 and 2 of the

We agree with the judgment of the district court and affirm because, as we view it, the case falls short of showing a violation of either the Sherman Act or the Clayton Act.

■ In essence the case boils down to plaintiffs' complaint that they were separated from their distribution functions as a result of the newspaper's effort to obtain a list of subscribers. As we view it the newspaper was advancing a valid interest in seeking to obtain such a list, since it has a right to know the extent of its coverage and also has a right to have a list which will permit it to make the distribution itself when necessary. Absent such a list, the newspaper is at the mercy of the distributors though it is held responsible for failure to make particular deliveries. Thus, the defendant newspaper's action here was for the purpose of freeing itself from possible coercion.

Accordingly, in our view this is a simple refusal to deal with distributors, and it does not therefore have antitrust undertones or overtones. Such simple refusal has long been held not to be violative of the antitrust laws. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). We are not here faced with an effort to enforce by coercion a retail price maintenance scheme. See United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). Furthermore, there is no evidence whatever to establish concerted action on the part of the named defendants and others. Nor is there any showing that the refusal to

deal is linked with any effort on the part of the defendants to wield monopoly power and to thus violate § 2. See United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948) and Schine Chain Theatres v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245 (1948).

Plaintiffs seek to bring themselves within the ruling of the Supreme Court in Albrecht v. Herald Company, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), which also involved newspaper distribution and circulation. There the newspaper imposed on the distributor a schedule of maximum prices. There, also, the newspaper implemented its price program by hiring competitors to solicit customers away from the plaintiff and did so in an effort to force the plaintiff to lower his price. The Supreme Court held that this was a combination within the meaning of § 1. It refused to distinguish between maximum and minimum price fixing, holding that the maximum price was also the minimum and therefore constituted effective price fixing.

It is not seriously contended in the case at bar that price fixing entered into the activities of the defendant-appellee. The sole bone of contention was that which was previously mentioned, the refusal of plaintiffs to furnish route lists.

■ Finally, the record is devoid of evidence to establish a violation of the Robinson-Patman Act since there is no substantial showing that the defendant newspaper discriminated or that, if so,

Sherman Act, and with violation of Section 2 of the Robinson-Patman Act for some of the years when they were carriers for the newspaper.

"The Court has reviewed all of the files, affidavits and depositions and all of the materials in the case, and concludes that the Motion for Summary Judgment is well taken.

"Without reciting facts at length, it is sufficient to say that it appears without contradiction that the termination of plaintiffs by the newspaper amounted to nothing more than a re-

fusal to deal. The use by the newspaper of the right to change distributors does not without more give rise to a claim under the Sherman Act.

"It is undisputed that all of the sales by the newspaper to carriers and by the carriers were in New Mexico. There not being a single sale in interstate commerce, the claim under the Robinson-Patman Act fails for lack of jurisdiction.

"An Order should be entered granting defendants' Motion for Summary Judgment."

it was in commerce. Nor does the record reveal any other unfair trade practice.

We conclude that the plaintiffs' claims are wholly lacking in merit and that the judgment of the trial court is correct.

The judgment is affirmed.