John WILSON and Jeffery A. Wilson, Plaintiffs-Appellants,

v.

I.B.E. INDUSTRIES, INC., a Texas Corporation, et al., Defendants-Appellees.

No. 74–1570.

United States Court of Appeals, Fifth Circuit.

April 3, 1975.

Darrell L. Keith, Hurst, Tex., for plaintiffs-appellants.

Patrick F. McGowan, Dallas, Tex., for defendants-appellees.

Before MORGAN and CLARK, Circuit Judges, and RUBIN, District Judge.

LEWIS R. MORGAN, Circuit Judge:

In this case we are called upon to determine whether, the lessor/supplier of a gasoline station may unilaterally refuse to deal with its lessee/purchaser because the lessee continues to do business with certain customers disliked by the lessor. Finding that the lessor's actions in this case did not amount to a violation of Section 1 of the Sherman Act, we affirm the judgment of the district court.

### I.

Plaintiffs John Wilson and Jeffery A. Wilson operated a Texaco service station in Denton, Texas, as tenants-at-will under an agreement with the local Texaco distributor, I.B.E. Industries, Inc. I.B.E. owned the building, the underground storage tanks, gasoline pumps, and racks at the Texaco station. The Wilsons purchased gasoline and oil products from I.B.E. and sold them to the general public. Two of the Wilsons' largest customers were local automobile dealerships, Utter Ford and Wyatt Volkswagon, for whom the Wilsons provided cleanup and "make ready" business and to whom the Wilsons sold gasoline and related products.

According to the testimony of John Wilson, the Wilsons were visited on July 12, 1971, by Ed Keniff, general manager of I.B.E. Allegedly, Keniff said that I.B.E. and the Wilsons would have to "part company" unless the Wilsons gave up the automobile dealerships' business because "it clutters up the station too much." The Wilsons refused to comply with this demand and I.B.E. subsequently discontinued gasoline deliveries to the Wilsons' station. The Wilsons then moved to a nearby Arco station, but the volume of their business dropped off and they were eventually forced to give up the service station business entirely.

The Wilsons sued I.B.E. seeking damages under § 1 of the Sherman Act (15 U.S.C. § 1 (1973)). At trial I.B.E. maintained that the Wilsons were asked to leave the station solely because three checks they tendered to I.B.E. in June, 1971, as payments for gasoline were returned marked "insufficient funds." The Wilsons did not deny that these checks were returned, but contended that they were forced to leave because they would not stop servicing the two car dealerships. In spite of the fact that subsequent tenants at the station serviced the two car dealerships, the trial resulted in a hung jury. The district court then entered judgment for I.B.E., in accordance with a motion for directed verdict made prior to the submission of the case to the jury. The court based the decision upon its finding that the evidence revealed no contract, combination, or conspiracy in restraint of trade. The Wilsons appeal. Of course, in con-

sidering the propriety of the district court's order we consider the evidence in a light most favorable to the appellant. *See* Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

## II.

I.B.E. is a wholesale distributor that does not compete with its own retailers for customers. Appellants have neither alleged nor proven any anti-competitive animus on I.B.E.'s part,[1] nor any anti-competitive effect of the distributor's actions. Nevertheless, appellants allege that I.B.E.'s actions violated the Sherman Act under the "per se" rule of United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).[2]

In the *Schwinn* case the Supreme Court held that a manufacturer's method of franchising dealers and confining their sales to specific territorial areas was not an unreasonable restraint of trade as long as the manufacturer retained all indicia of ownership and dealers were indistinguishable in function from agents or salesmen. *Id.* 411 F.2d at 381. However, once the manufacturer has parted with dominion over the product, his efforts to restrict persons to whom the product could be transferred—"whether by explicit agreement or by silent combination or understanding with his vendee"—is a per se violation of § 1 of the Sherman Act. *Id.* at 382. Appellants therefore argue that where a manufacturer or distributor sells a product to a retailer subject to restrictions on its transfer, a per se violation of the Sherman Act results. *See id.* at 379.

The language of the *Schwinn* case is quite broad. However, the Court

in that case was considering a complex scheme in which a manufacturer developed an entire distribution system for its product by parceling out exclusive territories to each of its distributors. Hence, in *Schwinn*, as well as those cases upon which it relies, *see id.* at 371–73, a manufacturer not only assigned territories or customers to its distributors, but also articulated resale restrictions. Moreover, most of those cases which have relied upon *Schwinn's* language have considered precisely the same type of vast retail distribution network reinforced by customer or territorial resale restrictions. *See, e. g.,* Hobart Bros. Co. v. Malcolm T. Gilliland, Inc., 471 F.2d 894 (5th Cir. 1973), cert. denied, 412 U.S. 923, 93 S.Ct. 2736, 37 L.Ed.2d 150 (1973); Cook v. Ralston Purina Co., 366 F.Supp. 999 (M.D. Ga.1973). We therefore believe that *Schwinn* requires proof of something more than an agreement to cut off one or two customers for reasons that have nothing to do with the supplier's pattern of distribution or the demands of competition. Since the record reveals, at best, only a one-time demand that the appellant stop dealing with two of its customers,[3] we hold the per se rule of *Schwinn* inapplicable. Accordingly, the situation before us is simply a distributor's refusal to deal with a retailer, and it therefore lacks any anti-trust overtones. *See* Anaya v. Las Cruces Sun News, 455 F.2d 670 (10th Cir. 1972).

I.B.E. was also the appellants' lessor; it owned all the property the appellants used in their business except the gas they sold. I.B.E. thus had a legitimate interest in maintaining the premises, because they would revert to it at the end of the lease term, and in maintaining the appellants' business, since I.B.E.

1. In fact, appellant John Wilson conceded at trial that he could think of no reason for I.B.E.'s alleged decision to terminate sales to two such valuable customers.

2. Although the challenged activity in this case is I.B.E.'s alleged attempt to "cut off" the car dealers, the suit here is brought by the retail outlet rather than the car dealers or the government. It would therefore appear that the appellants are trying to fit their case into

a "territorial restriction" or "resale price maintenance" analysis, rather than a mere refusal to deal.

3. There is no evidence in the record of an attempt by I.B.E. to coerce the Wilsons or to cut off the car dealerships by pressuring other retail outlets. The parties in this case never entered into any type of agreement to limit sales, nor did I.B.E. enter into an agreement with any other party in order to limit the appellants' sales.

might well need to operate the station itself or find another lessee in the future. It was entitled to protect this interest by refusing to deal with a tenant who "cluttered up" the station.

██ The weight of precedent clearly indicates that a distributor may discontinue dealing with a particular retailer for business reasons which are sufficient to the distributor, and adverse effect on the business of the retailers is immaterial in the absence of any arrangement restraining trade. Bushie v. Stenocord Corp., 460 F.2d 116, 119 (9th Cir. 1972); Ricchetti v. Meister Brau, Inc., 431 F.2d 1211, 1214 (9th Cir. 1970), cert. denied 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971). Since the record does not reveal any anti-competitive effects of I.B.E.'s actions, the Wilsons' arguments fail to present a violation of the anti-trust laws. See Bushie v. Stenocord Corp., supra; Anaya v. Las Cruces Sun News, supra.

The appellants rely upon Sahm v. V-1 Oil Co., 402 F.2d 69 (10th Cir. 1968), but their reliance is misplaced. In that case, the plaintiff had a written agreement which provided for a one-year lease of a service station in Salt Lake City, Utah, with the right to terminate on 30 days written notice. At the time the parties entered into the lease, the plaintiff orally agreed to sell gasoline consigned to him by the defendant at prices set by the defendant. A few months later, the plaintiff raised the price of the gas he sold. The defendant gave 30 days written notice of termination but indicated that it would not terminate the lease if plaintiff would adhere to the pricing agreement. The plaintiff, however, remained adamant and the lease was cancelled. In reversing the dismissal of the plaintiff's complaint, the Tenth Circuit held that § 1 of the Sherman Act was violated because the resale price maintenance agreement was tied to and enforced by related agreements between the parties, and the related agreements were used by one of the parties in an attempt to reinstate the price-fixing agreement. Hence, the 30-day termination clause was construed as an agreement supporting a § 1 clause of action. See id. at 72.

The Sahm case deals with resale price-fixing, a concept not present here. Hence, the holding of that case is based upon precedents and policy reasons wholly inapplicable to the situation before us.[4] We therefore believe Sahm inapposite and we do not reach the issues presented there.

For the reasons set forth above, the judgment of the district court is affirmed.

---

4. Vertical resale price-fixing has long received hostile treatment by the Supreme Court. See United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1966); Dr. Miles Medical Co. v. Park & Sons, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1966). However, from its first consideration of the question, the Supreme Court has recognized that vertical territorial and customer restrictions have different, and perhaps less onerous, effects upon competition than does vertical price-fixing. See White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963). Indeed, the Court in Schwinn specifically distinguished unlawful price-fixing from the vertical territorial and customer restrictions before it. See United States v. Arnold, Schwinn & Co., 388 U.S. 365, 372–73, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).