KERR–McGEE CORPORATION, a
Delaware Corporation, Appellee,

v.

Chester CUTTER, Appellant.

No. 48500.

Supreme Court of Oklahoma.

March 29, 1977.

Opinion Corrected on Denial of
Rehearing May 23, 1977.

William R. Davis, Raymond E. Tompkins, John Shelton, Oklahoma City, for appellant.

Derrill Cody, Richard Harris and Kerr, Davis, Irvine, Burbage, Krasnow & Rhodes by Francis S. Irvine, Oklahoma City, for appellee.

HODGES, Chief Justice.

Kerr-McGee Corporation, appellee, as lessee of premises on which a service station building together with canopies, gasoline pumps, underground storage tanks, and other fixtures and equipment for conducting the business of a service station were located, brought a forcible entry and detainer action against lessor, Chester Cutter, appellant, under the provisions of 12 O.S. 1971 § 1148.1.[1] Kerr-McGee sought possession of the property when Cutter refused to yield possession of the premises after termination by Kerr-McGee of his consignee service station lease.[2] Cutter answered and cross-petitioned requesting (1) the court to reform the contract, (2) recovery of damages and exemplary damages for Kerr-McGee's alleged failure to deliver gasoline and (3) recovery of damages for loss of income. Demurrers were sustained to the second and third causes of action. The trial court, after hearing the appellant's evidence, sustained appellee's demurrer to the evidence and motion for directed verdict and entered its judgment awarding possession and control of the premises together with the buildings, fixtures and equipment located thereon and costs of the action to Kerr-McGee.

Appellant asserts that the trial court was without jurisdiction because 12 O.S. § 1148.1 does not permit seeking possession of personal property or termination of collateral contractual agreements. The lease identifies the items in dispute as fixtures and equipment necessary to operation of a service station on the premises and they are specifically identified as a part of the leased premises. A cursory examination of the items listed reveals the bulk of them are fixtures,[3] but it is equally apparent that both parties to the agreement intended the

---

1. It is provided by 12 O.S.1971 § 1148.1:

 The district court shall have jurisdiction to try all actions for the forcible entry and detention, or detention only, of real property, and claims for the collection of rent or damages to the premises, or both, may be included in the same action, but other claims may not be included in the same action. A judgment in an action brought under this Act shall be conclusive as to any issues adjudicated therein, but it shall not be a bar to any other action brought by either party.

2. The lease Term provides:

 "TERM: To have and to hold for the initial term beginning on the 20th day of June 1972, and ending on the 15th day of August 1972, and thereafter from month to month, provided, that either party may terminate this lease at the last mentioned date, or on the same date in any succeeding month by giving to the other written notice of such termination ten (10) days or more prior to the date upon which such termination shall become effective."

3. The Lease identifies the items on Exhibit "A" as service station buildings, fixtures and equipment necessary to the operation of a service station on the premises. They are specifically identified in Paragraph 1 of the Additional Provisions of such Lease as a part of the "leased property" and identified as the "leased property and equipment" which Kerr-McGee agrees to keep in good repair.

Exhibit "A" consists of eight gasoline pumps (attached to concrete curbings), two submerged pumps (placed in the buried tanks), two 10,000-gallon tanks for gasoline and one 500-gallon tank for waste oil (buried under the concrete drives and apron), one Kerr-McGee Signarama (a lighted sign on steel standard attached to a concrete base), two metal canopies over the drive, 25' x 40' in size (on steel standards attached to concrete foundations), one automobile lift (attached to concrete foundation below concrete drive), one tire machine (bolted to the concrete drive), water fountain (attached to wall of building), floor safe (attached to concrete foundation below concrete floor of building), three gas heaters (in walls of rest rooms and office), an air compressor (bolted to the floor), and other items of equipment such as an oil merchandiser, battery charger, gear lube equipment, desk, table and chairs, fire extinguisher, map rack, price signs, air hoses, data recorder, ladder and wiper blade cabinet.

items listed to be considered a part of the premises for which Kerr-McGee assumed maintenance duties under the terms of the lease.[4] In *Hall v. Woody*, 180 Okl. 370, 69 P.2d 379, 380 (1937), it was held that parties may in dealing with chattels used in connection with real estate designate to them whatever character they desire as either realty or personalty and the courts will give the property the character the parties have placed upon it.

 Kerr-McGee argues that the Court had jurisdiction because Cutter unlawfully detained real property as a tenant holding over his term after notice to quit by the landlord. We agree. It is provided by 12 O.S.1971 § 1148.3 proceedings under the Forcible Entry and Detainer Act may be had in all cases against tenants holding over their terms.[5] Cutter alleges that the relationship of landlord and tenant did not exist and, therefore, the trial court lacked jurisdiction. He argues that a service station lease agreement, coupled with a dealer agreement for the furnishing of gasoline constitutes a franchisor-franchisee relationship which may not be terminated in the absence of good cause regardless of whether the good cause provision appears in the lease.

Only one jurisdiction considering this proposition has reached the result urged by Cutter. The New Jersey Franchise Practices Act contains a provision which limits the right of termination to instances where good cause is shown.[6] In *Shell Oil Co. v. Marinello*, 63 N.J. 402, 307 A.2d 598 *cert. den.* 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1973) the New Jersey Supreme Court held that a service station lease agreement coupled with a dealer agreement to furnish gasoline constitutes a franchisor-franchisee relationship which may not be terminated without good cause whether such provision appears in the lease or dealer agreement as a matter of public policy. Although the court held the statute was not directly controlling because the last renewal antedated the effective date of the statute, the court held the Act reflected the legislative concern over long-standing abuses in the franchise relationship, particularly provisions giving the franchisor the right to terminate, and that the Act put into statutory from the extant public policy of the state.

 We do not find the decision in *Marinello* to be persuasive because the decision was based on public policy as adopted by statute which prohibited a franchisor from failing to renew a franchise without cause. Oklahoma has not adopted a franchise law or the general public policy that a franchisee may not be terminated without good cause. We see no compelling reason to deny recovery of possession of the premises to Kerr-McGee. In all other jurisdictions in which the subject has been addressed[7] it has consistently been held that

---

**4.** The lease provides:

"During the term hereof, lessor agrees to maintain the leased property and equipment in good repair . . . ."

**5.** 12 O.S.1971 § 1148.3 provides in pertinent part:

Proceedings under this Act may be had in all cases against tenants holding over their terms; in sales or real estate on executions, orders or other judicial process, when the judgment debtor was in possession at the time of the rendition of the judgment or decree, by virtue of which such sale was made; in sales by executors, administrators, guardians and on partition, where any of the parties to the partition were in possession at the commencement of the suit, after such sales, so made, on execution or otherwise, shall have been examined by the proper court, and the same by said court, adjudged valid; and in cases where the defendant

is a settler or occupier of lands and tenements without color of title, and to which the complainant has the right of possession. This section is not to be construed as limiting the provisions of the preceding section.

**6.** The New Jersey Franchise Practices Act, N.J.S.A. 56:10–5 prohibits a franchisor from terminating, cancelling, or failing to renew a franchise without good cause which is defined as the failure by the franchisee to substantially comply with the requirements imposed on him by the franchise.

**7.** *Wilson v. IBE Industries, Inc.*, 510 F.2d 986 (5th Cir. 1975); *Bushie v. Stenocord Corp.*, 460 F.2d 116 (9th Cir. 1972); *Russell v. Shell Oil Co.*, 382 F.Supp. 395 (E.D. Mich. 1974), *aff'd.* 497 F.2d 924 (6th Cir. 1974); *Mobil Oil Corp. v. Rubenfeld*, 48 A.D.2d 428, 370 N.Y.S.2d 943 (1975); *Burk v. Gulf Oil Corp.*, 397 F.Supp. 421, 423 (D.Mont.1975).

the relationship is that of lessor-lessee, and that courts will not imply a good cause requirement in order to terminate the lease, but will permit the lease to be terminated in accordance with the contract provisions. We adopt the majority view that a landlord-tenant relationship existed between the parties, and that termination of the lease is to be determined by the traditional principles of real property and contract law.

Cutter also contends the trial court committed reversible error in failing to submit questions of fact to the jury, specifically the allegation that there was fraud in the inducement of the contract.[8] We find from an examination of the record that the trial court was correct in its finding there was no fraud or misrepresentation. Cutter was well aware of the termination clause in the lease [9] which provided for ten days' written notice of termination. The mere fact that he testified, stating he was told Kerr-McGee did not like to change service station operators and if he did a good job he could keep the station as long as he desired, is not a sufficient material false representation to rise to the dignity of a question of fact for the jury.

The trial court also found the terms of the lease were not ambiguous; that proper notice of termination was given; there was no fraud or misrepresentation to induce the lease agreement, that there the appellant was not forced to purchase accessories from Kerr-McGee, nor was the price of gasoline fixed. The court also found that although the lease was for a short term it did not shock the conscience of the court [10] and that the lease term was valid so long as it was not used to cancel or terminate for illegal purposes.[11] An examination of the record supports the trial court's findings and conclusions.

AFFIRMED.

LAVENDER, V. C. J., and WILLIAMS, IRWIN and BERRY, JJ., concur.

BARNES, SIMMS and DOOLIN, JJ., dissent.

---

8. The elements of actionable fraud as enunciated by this Court in *State ex rel. Southwestern Bell Telephone Co.*, 519 P.2d 491, 495 (Okl. 1974) are:

(1) That defendant made a material representation; (2) that it was false; (3) that he made it when he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. All these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery.

9. See note 2, supra.

10. Under Oklahoma law, in the absence of fraud, duress, undue influence or mistake, the fairness, unfairness, folly or wisdom or inequality of a contract are immaterial. Such questions are exclusively within the rights of the contracting parties to adjust at the time of entering into the contract. *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 820 (Okl.1973); *Johnson v. Richards*, 99 Okl. 254, 226 P. 559, 560 (1924).

11. Where there is no competent evidence reasonably tending to support plaintiff's case, the judgment of the trial court sustaining demurrer to plaintiff's evidence will not be reversed on appeal. *Pitts v. First State Bank of Caddo*, 390 P.2d 867 (Okl.1963).