**In re MAKO, INC., EIN 73–1775360, Debtor.**

**Bankruptcy No. 88–00475.**

United States Bankruptcy Court, E.D. Oklahoma.

Aug. 26, 1988.

Ron Wright, for United.

Mitchell Shamas, Okmulgee, Okl., for DIP.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On July 14, 1988, this Court conducted a hearing in the above matter regarding the Debtor-in-Possession's (DIP) Motion for Approval of Assumption of Unexpired Leases with accompanying Objections by Lessor, United Commercial Properties (United). Also coming on for consideration was United's Motion to Modify Provision of Automatic Stay to Allow Completion of Forcible Entry and Detainer Actions as to Stores No. 638, 641, 644, 646, 649 and 655.

Appearances at the hearing were made by Ron Wright on behalf of United and Mitchell Shamas for the DIP.

At the conclusion of the hearing of arguments, this Court gave the parties the opportunity to file Stipulations of Facts and Briefs in support of their respective legal positions. All Briefs were received by August 19, 1988.

After review of the facts, Briefs and the file, we FIND:

### FINDINGS OF FACT

1. This is a "core" matter pursuant to 28 U.S.C. § 157(b) and final determination is founded upon the guidelines within Bankruptcy Rule 7056.

2. The DIP entered into written lease agreements encompassing the six non-resi-

dential real property sites at issue in this case with Muskogee Development Company and its successor company, Benchmark Development Group. These Leases were executed between the years 1978 and 1985.

3. On September 30, 1987, Benchmark Development executed an Assignment of the Leases to United Commercial Properties, Inc. Mr. James Brady, then president of the DIP, executed an "Acknowledgment of Assignment of Leases" on October 9, 1987.

4. Lease payments on the six properties (Stores No. 638, 641, 644, 646, 649 and 655) for the month of January (due January 5, 1988 to United from the DIP) were not received on that date.

5. The Lease Agreement provides that upon the default in the performance of a covenant (nonpayment of rents) by the Lessee (DIP) and "such default shall continue for thirty (30) days after receipt by Lessee of written notice thereof given by Lessor ..., then Lessor, at the option of Lessor, may declare said term ended and may re-enter upon the leased premises either with or without process of law and remove all persons therefrom."

6. On January 6, 1988, United sent the DIP a Notice of Default by Certified Mail which stated that in accordance with the Lease Agreements, "Should this default continue for 30 days, I may exercise one or more of my options available under the Lease, which include re-entering upon the lease premises, either with or without process of law, removing all persons and property and re-letting the demised premises."

7. The DIP received the Notice of Default on January 8, 1988.

8. On January 26, 1988, the DIP delivered a check in the amount of $18,185.51 for satisfaction of the accrued rent due and owing United. However, this check was returned to United as unpaid due to insufficient funds in the DIP'S account.

9. United mailed, by Certified Mail, written Notice of Termination of the Lease for failure to cure the January default to the DIP, dated February 6, 1988.

10. On February 8, 1988, United filed actions for forcible entry and detainer in Muskogee County, Oklahoma on Stores No. 641 and 638. Also, similar actions were filed in Wagoner County, Oklahoma on Stores No. 649 and 644, Delaware County, Oklahoma on Store No. 646 and Sebastian County, Arkansas on Store No. 655.

11. On February 12, 1988, James Treat, current President of the DIP, tendered payment for defaulted rents but such payment was refused by United. This tender represents the last act by DIP to cure their lease default.

12. The Notice of Termination was received by the DIP on February 13, 1988.

13. The DIP sought Chapter 11 relief under the United States Bankruptcy Code on April 29, 1988, wherein it moved to assume the Leases at issue in this Order.

## CONCLUSIONS OF LAW

A. Under the Bankruptcy Code at 11 U.S.C. § 365(c)(3), a DIP or Trustee is restricted on what leases and executory contracts may be assumed. The operative language states:

"(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(3) such lease is of nonresidential real property and has been terminated under applicable non-bankruptcy law prior to the Order for Relief."

In the present case, the parties do not dispute that the real property at issue is of a nonresidential character. However, disagreement arises in the determination as to whether the lease under which the parties are operating was properly terminated pre-Petition.

B. It is the executory nature of lease agreements which gives them their assumability under § 365. When a lease agreement has been properly terminated, it ceases to be assumable under the Code. *In the Matter of Mimi's of Atlanta*, 5 B.R. 623 (N.D.Ga.1980). Thus, a threshold determi-

nation by this Court as to the propriety of the termination of the lease is required.

■ C. State law, in this case Oklahoma state law, traditionally governs when resolving a question of whether a lease has been properly terminated. *In re Pioneer Oil and Gas Co.*, 333 F.Supp. 1055 (E.D. La.1971). Normally, this would engage the provisions of Okla.Stat.Ann. tit. 41, § 6 (West Supp.1988) governing the statutory requirements for proper termination of a lease agreement. However, in a lessor-lessee relationship such as the one present in the case before this Court, the parties will be permitted to terminate the lease in accordance with the provisions of the contract from which the leasing agreement arose. *Kerr–McGee Corp. v. Cutter*, 564 P.2d 215 (Okla.1977). *Wilson v. IBE Industries, Inc.*, 510 F.2d 986 (5th Cir.1975).

■ Thus, in this case, the terms of the lease will govern the propriety of United's termination.

■ D. The lease in the instant case provides that if the default of the Lessee continues thirty (30) days after receipt of a written Notice of Default, the Lessor may terminate the Lease by "declar(ing) said term ended." The Agreement, however, fails in its ambiguous drafting to stipulate in strict contractual terms the form that the declaration of intent may take or even if one is contemplated by the parties at all.

It is a well settled proposition that "if a lessor desires to terminate a lease for breach of covenant he must manifest his intent by some *clear and unequivocal act,* thereby giving the lessee notice of his intention." *In re Ferris*, 415 F.Supp. 33, 38 (W.D.Okla.1976). (Emphasis added)

In the present case, the Lessee's first notice of termination occurred upon the receipt by the DIP of a Notice of Default to which it reacted by tendering a check for which there were insufficient funds to make payment. Next, at the end of the thirty (30) day period on February 8, United filed the various forcible entry and detainer actions in the proper State Court on the six properties. These would indeed seem to serve as an "unequivocal act" of

the Lessor's intent to terminate as of February 8, 1988.

Also, the letter of February 6, 1988 clearly states that the Lessor was exercising its right to terminate the Lease "as of February 7, 1988." This poor choice of phrasing appears ambiguous as to when the thirty (30) day grace period expires. However, the letter continues that "in addition to the rental accrued and owing as of February 8, 1988 . . ., any holding over of the premises after February 7, 1988 will be determined at double the yearly value of the property." This statement clearly demonstrates that United intended a termination of the agreement. Although the extended period taken for delivery rendered this notice somewhat insufficient, the intent of United was unquestionable—to terminate the lease.

Additionally, in order to determine the intent of the Lessor, the recipient Lessee should be expected to consider the content of the notice received and not simply the date affixed upon it. It stands to reason that a notice of termination may be found premature or not premature due to the accuracy of the date for termination stated within the content of the termination letter. In this case, the intent of United and the accuracy of the date stated within the letter are without doubt.

E. Practical considerations must also inevitably enter into the decision of this Court. First, whether the DIP received notice by February 8 or February 13, the thirty (30) day grace period had come to an end and the DIP had not made a valid offer to cure within those thirty (30) days as plainly set forth in the Lease Agreement. For this Court to ignore this negligent action is for this Court to ignore the obligation of the parties to possess clean hands when seeking relief. Second, in constructing the original Lease Agreements, the parties made it abundantly clear where written notice was required. This Court must consider that if these sophisticated business entities wanted this type of notice requirement, they would presumably have been explicit and stated that desire. We will not engage in the practice of rewriting a contract to incorporate more advantageous

terms not originally a part of the bargain between the parties. Finally, in strictly construing this Agreement, the Lessor was required to acknowledge default by notice to Lessee, wait thirty (30) days, then declare the term at an end by some clear method and proceed to re-enter. These requirements have been met.

■ F. The DIP also claims these assets are essential for reorganization. "Courts will not revive a terminated lease simply because of the lease's importance to the reorganization efforts." *In re Maxwell*, 40 B.R. 231 (N.D.Ill.1984).

This policy will likewise be followed by this Court.

■ G. The DIP also alleges that the transfers involved in this case are preferential in nature pursuant to 11 U.S.C. § 547(b). However, United will not receive any more than it would be entitled to under a Chapter 7 liquidation since the improvements made upon the property are in the nature of fixtures and thus included in any repossession by United pursuant to the Lease Agreement between the parties.

IT IS THEREFORE ORDERED THAT:

1. United has properly terminated the leasing agreement pre-Petition;

2. DIP'S Motion for Approval of Assumption of Leases is denied as t Stores No. 638, 641, 644, 646, 649 and 655; and

3. United's Motion to Modify Automatic Stay to Allow Completion of Forcible Entry and Detainer Actions is moot.