**ILLINOIS CORPORATE TRAVEL, INC., d/b/a McTravel Travel Services, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., IVI Travel Inc., and Travel Rite, Inc., Defendants.**

**No. 85 C 7079.**

United States District Court, N.D. Illinois, E.D.

Nov. 18, 1988.

Motion to Reconsider Denied Jan. 12, 1989.

Malcolm H. Brooks, Steven B. Vrick, John Ryan, Jr., McBride, Baker & Coles, Chicago, Ill., for plaintiff.

Mary P. Chapin, Clay H. Phillips, Russell M. Pelton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Jeffrey Thomas, Steven C. McCracken, Gibson, Dunn & Crutcher, Newport Beach, Cal., Alan H. Silberman, Jay Conison, Sonnenschein, Carlin, Nath & Rosenthal, Mark L. Yeager, David Marx, Jr., John C. Simons, McDermott, Will & Emery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

American Airlines gives its passengers "something special in the air." McTravel Travel Services wants to give them something special on their fares. American will let travel agencies discount tickets on American flights, so long as they do not advertise these discounts. McTravel thinks this policy violates § 1 of the Sherman Act, 15 U.S.C. § 1, as well as Illinois statutory and common law, and has thus sued American and another travel agency, IVI Travel, Inc. McTravel wants an injunction requiring American to allow McTravel to advertise discounted tickets on American flights, and monetary damages resulting from American's refusal to do so.

American won the first battle when Judge Getzendanner denied McTravel's motion for a preliminary injunction, *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 85 C 7079, slip op. (N.D.Ill. September 15, 1985) [available on WESTLAW, 1985 WL 2548], *aff'd*, 806 F.2d 722 (7th Cir.1986) (Easterbrook, J.), and the second when this court ruled that the Federal Aviation Act, 49 U.S.C.App. § 1305(a)(1), preempts McTravel's state law claims, *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 682 F.Supp. 378 (N.D.Ill. 1988). American and IVI now seek to end the war, moving for summary judgment on the Sherman Act claims. For the reasons set forth below, their motions will be granted.

## BACKGROUND

With the single exception discussed below, the underlying facts in this case are not in dispute.[1] American sells tickets on its flights in two ways. Thirty percent are sold by American directly. Seventy percent are sold by authorized independent travel agencies. These travel agencies sell tickets for many airlines, and engage in a number of additional services: They provide their clients with information and advice, make reservations, write and deliver tickets, notify customers of schedule changes, issue boarding passes and sell travel-related insurance.

In order to sell a ticket on an American flight, a travel agency must be accredited by the Airline Reporting Corporation ("the ARC"). Once accredited, an agency can apply to American for authorization, in which case it must agree to the standard ARC Travel Agency Agreement ("the ARC Agreement") and American's addendum to it. An agency will also be able to sell tickets on American flights if it is an authorized agent for an airline with which American has entered into a Bilateral Interline Agreement ("a BIA Agreement"), unless American specifically notifies the other airline that its authorized travel agencies may not issue American tickets.

Pursuant to the ARC Agreement, a travel agency must check for availability with American before issuing a ticket. Once it does so, American bears any risk for the failure to abide by the terms of the ticket. The only risks travel agencies assume in selling tickets arise out of their own misconduct: Because credit card companies prohibit accepting credit card orders over the telephone, travel agencies selling tickets in this fashion assume the credit risk of these sales; in addition, if a travel agency fails to take "reasonable care" to protect tickets in their possession, it bears the risk of theft.

From 1981 through 1984, American's addendum to the ARC Agreement required travel agencies ticketing American flights to charge the same as American does. American would then pay the agencies a 10% commission on each sale. This contract expired on December 31, 1984.

On January 1, 1985, deregulation in the airline industry entered a new era as the Civil Aeronautics Board was disbanded and many airlines revoked their earlier policies forbidding travel agencies to sell discounted tickets. That month, Illinois Corporate Travel ("ICT"), an ARC accredited, and American authorized, travel agency opened a branch office under the name McTravel. McTravel was created as a discount travel agency. Rather than charge a traveller the full amount of an airline ticket, it would charge a set fee over the amount it had to pay the airline for the ticket—i.e., 90% of the full price established by the airline—and rebate the remainder of its 10% commission to the traveler. Because McTravel did not at first have its own ARC accreditation, it used ICT to issue airline tickets.

On January 18, the Vice President of IVI called American's zone sales manager for Northern Illinois, Richard Gard, to inform him that McTravel was advertising discounts on airline tickets. He asked, "You aren't going to let these guys do this, are you?"

Later that day, Mr. Gard contacted American sales representative Susan Wellinghoff, who went to McTravel and advised McTravel President Richard Dickieson that discounting American tickets was forbidden. After a brief discussion, Ms. Wellinghoff told Mr. Dickieson that she would speak with Mr. Gard and get back to him.

On January 22, Ms. Wellinghoff and Mr. Dickieson met again. Ms. Wellinghoff explained that American had received complaints from IVI, one of the largest travel

---

**1.** In their memoranda for summary judgment, defendants rely extensively on Judge Getzendanner's factual findings in denying the preliminary injunction. That was wrong, and if the defendants' lawyers would like to know why, they should revisit their notes from first year of law school. *See also University of Texas v. Canenisch,* 451 U.S. 390–95, 101 S.Ct. 1830, 1831–34, 68 L.Ed.2d 175 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.").

agencies in the Chicago area, regarding McTravel's advertising. She also clarified that American was no longer enforcing its earlier policy of prohibiting discounted fares, but that American would not permit advertising of these discounts. She told Mr. Dickieson that if McTravel persisted in its advertising, American would revoke McTravel's authority to issue American tickets. After this meeting, Mr. Dickieson's efforts to discuss the matter further with American were rebuffed.

In March, McTravel received ARC accreditation, but American has refused to authorize McTravel to sell American tickets, and has notified other airlines that it will no longer honor tickets issued by their authorized travel agencies. Accordingly, McTravel is operating today without the ability to sell tickets on American flights.

The only disputed factual issue lies in American's motivation for prohibiting McTravel from advertising discounts. American maintains that the policy against advertising discounts arose out of a meeting in late 1984 at which it was determined that the policy against discounting was impossible to enforce but that a policy prohibiting advertising would be both effective and enforceable. American points to a letter dated January 3, 1985, which explained that American's addendum to the new ARC Agreement prohibits advertising discounted fares, as establishing that the policy was put into place prior to the complaint from IVI. American concedes that its protest to McTravel's advertising was made in response to the call from IVI, but insists that the decision to deny McTravel the authority to issue American tickets was an independent one.

McTravel contends that both the decision and the policy were direct responses to complaints from IVI and other large travel agencies regarding McTravel's advertisements. It notes that, notwithstanding the date on the letter accompanying the new ARC Agreement and addendum, there is no evidence that any travel agency actually received the letter prior to February, 1985. It also points out that IVI and American had an express agreement relating to advertised discounts and that American took action against McTravel only after IVI complained about McTravel's advertising. McTravel argues that these facts create a genuine issue of fact as to whether American's no-advertising policy arose independently or, instead, resulted from the objections of McTravel's large competitors.

## DISCUSSION

Section 1 of the Sherman Act proscribes any "contract, combination ... or conspiracy in restraint of trade." 15 U.S.C. § 1. The Supreme Court has long held that, notwithstanding its unqualified language, § 1 "was intended to prohibit only unreasonable restraints of trade." *Business Electronic Corp. v. Sharp Electronics Corp.*, — U.S. —, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988). In most cases, "whether particular concerted action violates § 1 of the Sherman Act is determined through case-by-case application of the so-called rule of reason—that is, 'the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.'" *Id.* (quoting *Continental, T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977)).

At the same time, however, the Supreme Court has determined that certain categories of agreements are so "manifestly anticompetitive"—"always or almost always tend[ing] to restrict competition and decrease output," *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 289–90, 105 S.Ct. 2613, 2616–17, 86 L.Ed.2d 202 (1985) —that they are *per se* illegal. *Continental, T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. at 50, 97 S.Ct. at 2557. Once a plaintiff establishes that it has been injured by such an agreement, the plaintiff need prove nothing more in order to recover for its injury. *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). Both concerted refusals to deal sparked by competitors of the refused, *Klor's Inc. v. Broadway–Hale Stores, Inc.*,

359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), and concerted agreements on resale prices (or the advertisement of resale prices), *United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911), constitute *per se* violations of § 1.

McTravel presents three separate theories to support its allegations that American's refusal to allow it to issue American tickets violates § 1 of the Sherman Act. Count I claims that American's response to IVI's complaint constitutes a conspiratorial refusal to deal. Count II claims that American's actions in furtherance of the no-advertising agreement with other travel agencies represent concerted resale price maintenance. Count III claims that American's insistence that McTravel abide by the no-advertising policy is itself resale price maintenance in violation of § 1. Since all three claims allege conduct subject to the *per se* rule, McTravel argues that not only is summary judgment for defendants inappropriate, but that McTravel is entitled to judgment under each of its claims.

American does not deny at this juncture that the refusal to deal with McTravel, and the policy against advertising discounts, constitute unreasonable restraints of trade. Instead, it focuses on the § 1 requirement that, to be unlawful, such restraints involve concerted action. As Justice Rhenquist has explained.

[T]here is the basic distinction between concerted and independent action—a distinction not always clearly drawn by parties and courts. Section 1 of the Sherman Act requires that there be a "contract, combination ... or conspiracy" be-

tween the manufacturer and other distributors in order to establish a violation. 15 U.S.C. § 1. Independent action is not proscribed. A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.

*Monsanto Co. v. SprayRite Services Corp.*, 465 U.S. 752, 760–61, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1974). "Because the Sherman Act does not prohibit unreasonable restraints of trade as such—but only restraints effected by a contract, combination or conspiracy—it leaves untouched a single firm's anti-competitive conduct (short of threatened monopolization) that may be indistinguishable from the conduct of two firms subject to § 1 liability." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *see also United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *United States v. Colgate*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919).[2]

Taking the counts in reverse order, McTravel bases its resale price maintenance claim in Count III on American's relationship with McTravel alone. Although the Supreme Court has stated that a plaintiff can charge concerted action between himself and the supplier "as of the day he unwillingly complied with the restrictive franchise agreements," *Perma Life Mufflers v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed. 2d 982 (1968), American points out, and McTravel concedes, that McTravel never agreed to American's no-advertising demands. Accordingly, McTravel cannot establish concerted action between it and

**2.** McTravel seems to believe that even if it loses its arguments for *per se* illegality, it is still entitled to a trial under the rule of reason—perhaps because Judge Easterbrook undertook rule of reason analysis in one part of the *Illinois Corporate Travel* opinion. Yet, the *per se* rule of reason dichotomy depends entirely on the type of concerted activity at issue: price restraints are *per se* illegal; non-price restraints are subject to the rule of reason. Judge Easterbrook's inquiry under the rule of reason apparently reflects his hope that the Supreme Court will do away with the *per se* rule entirely, and subject

all concerted restraints of trade to rule of reason analysis. *See Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d at 730–31 (Flaum, J., concurring in the judgment). But it in no way negates McTravel's burden to establish a concerted restraint of trade in the first place—the critical issue in the defendants' motions for summary judgment on all three claims. (In *Business Electronic Corp. v. Sharp Electronics Corp.*, —— U.S. ——, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988), the Supreme Court reiterated that price fixing agreements remain illegal *per se* under § 1.)

American, *Santa Clara Valley Distributing v. Pabst Brewery*, 556 F.2d 942, 945 & n. 3 (9th Cir.1977),[3] and American is entitled to summary judgment on this count.

The other two counts are predicated on the relationship between American and IVI, and as such require a more extensive analysis. Count II focuses on the ARC Agreement and American's addendum prohibiting the advertising of discounts. To avoid summary judgment, McTravel must establish a genuine issue of fact as to whether American and IVI entered into an illegal agreement "that caused [McTravel] to suffer a cognizable injury." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

An agreement between a supplier and one of its distributors regarding prices is generally *per se* unlawful under § 1. Moreover, a causal connection between such an agreement and the termination of a non-agreeing distributor can usually be inferred because "[the agreement] may be necessary to maintain [the] agreement[ ] with [the] complying dealer[ ]," VII Areeda, *Antitrust Law*, ¶ 1446 at 1459; *see Monsanto Co. v. SprayRite Services Corp.*, 465 U.S. at 767–68, 104 S.Ct. at 1472–73. In light of American's concession

that it has an agreement with IVI on the advertising of discounts,[4] and the uncontested fact that American moved against McTravel almost immediately after receiving the complaint from IVI, McTravel argues that there is, at least, a jury question as to whether it is a victim of an illegal resale price maintenance agreement.

McTravel would be right,[5] were it not for a special limited exception to the prohibition against resale price agreements between suppliers and resellers. In *United States v. General Electric Co.*, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362 (1926), the Supreme Court held that § 1 does not apply to price restrictions imposed by suppliers on their agents. "The owner of an article ... is not violating the common law, or the Anti–Trust law, by seeking to dispose of his article directly to the consumer and fixing the price by which his agents transfer the title directly from him to the consumer." *Id.* at 488, 47 S.Ct. at 196.

In ruling on McTravel's motion for a preliminary injunction, Judge Getzendanner noted that this exception was called into question by *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). *Simpson* held that consignment arrangements between an oil company and

---

3. Although courts and commentators have observed that "it makes no sense to deny recovery to a pressured retailer who resists temptation to the last and grant it to one who momentarily yields but is restored to virtue by the vision of treble damages," *Albrecht v. Herald Co.*, 390 U.S. 145, 162, 88 S.Ct. 869, 878, 19 L.Ed.2d 998 (1968) (Harlan, J., dissenting); *Sahm v. V–1 Oil Co.*, 402 F.2d 69, 71 (10th Cir.1968); VII Areeda, *Antitrust Law*, ¶ 1452 at 132 (1986), "it is clear that if the plaintiff ... concedes that alleged pricing pressures never interfered with his resale pricing decisions, coerced acquiescence, and hence unlawful agreement, is not established." 2 Van Kalinowski, *Antitrust Laws and Trade Regulation*, § 6B.02[2] at 6B–25 (1988).

4. IVI apparently does not concur in American's concession that the two had an agreement on advertising, arguing that although the policy was included in American's addendum to the 1985 ARC Agreement, IVI never actually agreed to the policy. Nevertheless, in light of American's concession, and the fact that travel agencies *must* accept the terms of any American addendums in order to remain authorized agents of American, there exists, at least, a genu-

ine issue of fact regarding whether an agreement on advertising existed.

5. The defendants' argument that *Monsanto Co. v. SprayRite Services Corp.*, 465 U.S. 752, 760–61, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984), precludes finding the requisite causal connection between IVI's complaint and American's action against McTravel demonstrates their misunderstanding of the *Monsanto* ruling. In that case, the Supreme Court ruled that complaints from the plaintiff's competitors, followed by action on the part of the manufacturer, were insufficient to establish the existence of an agreement between the competitors and the manufacturer. *Id.* at 763, 104 S.Ct. at 1470. The Court did not say that, once such an agreement is shown, a complaint is insufficient to establish that the manufacturer's subsequent action against the plaintiff resulted from the agreement. On the contrary, the existence of an agreement followed by a complaint will always, or almost always, be enough to allow a jury to find the requisite causal connection between the agreement and the manufacturer's subsequent action. *See* VII Areeda, *Antitrust Law*, ¶ 1446 at 1459.

its distributors did not protect them from liability for price-fixing under § 1. *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 85 C 7079, slip op. at 8. Nevertheless, the district court interpreted *Simpson* as standing only for the proposition that where a traditional supplier-reseller relationship exists—where the "consignees bear the risk of the distribution process" and act as "independent businessmen"—§ 1 liability cannot be avoided by the use of consignment arrangements which leave technical ownership of the products in the supplier until the date of resale. *Id.* at 8–9 (citing *Hardwick v. Nu-Way Oil Co., Inc.*, 589 F.2d 806 (5th Cir.), *cert. denied*, 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979); *Fuchs Sugars & Syrups, Inc. v. Amstar*, 602 F.2d 1025 (2d Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979)). Judge Getzendanner then proceeded to find that travel agencies are "true agents" of the airlines:

A travel agent does not assume the significant risks and duties that resellers in a vast distribution scheme assume. The travel agent has no risk of unsold inventory, no credit risk, no authority to set prices, and no freedom to sell the product without checking with the airline for availability. The product is delivered directly from the airline to the customer, and the travel agent never takes "title" to the airline seat or assumes the risk that a particular seat may go unsold.

*Id.* at 11. Accordingly, the district court concluded that McTravel could not prevail on the resale price maintenance claim predicated on the no-advertising agreement.

In affirming this ruling, the Seventh Circuit noted that, after Judge Getzendanner had ruled, it had "concluded in *Morrison v. Murray Biscuit Co.*, 797 F.2d 1430 (7th Cir.1986), that *General Electric* is still healthy." *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d at 724; *accord Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215 (8th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 751, 98 L.Ed. 2d 763 (1988); *see also Business Electronic Corp. v. Sharp Electronics Corp.*, 108 S.Ct. at 1524 (§ 1 "does not apply to restrictions on price to be charged by one

who is in reality an agent of, not a buyer from, the manufacturer."). "The appropriate inquiry is 'whether the agency relationship has a function other than to circumvent the rule against price fixing,'" *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d at 725 (quoting *Morrison v. Murray Biscuit Co.*, 797 F.2d at 1436)—whether, "objectively viewed, the arrangement serves one of the economic functions of agencies in general, such as apportioning risk, or lodging pricing decisions in the firm best able to gauge market conditions." *Id.* at 726.

The Seventh Circuit agreed with Judge Getzendanner that this analysis "supports the ... conclusion that McTravel is an agent of airlines and not a reseller." *Id.* McTravel, for its part, clings to the parenthetical at the end of this discussion:

Of course, conclusions that depend on the record compiled so far might be altered if additional facts adduced at trial show that the district court has mischaracterized the nature of the relationship between airlines and travel service operators. Here and elsewhere, we speak only of the conclusion drawn on the basis of the existing record.

*Id.* McTravel insists that its additional evidence showing that, on virtually all sales, it assumes the credit risk, and that it engages in substantial activities in addition to ticketing airline passengers, mandates a re-evaluation of Judge Getzendanner's finding. This court disagrees.

First, it is worth noting that the relationship at issue here is the one between American and IVI, not the one between American and McTravel. Although Judge Easterbrook appeared to read Judge Getzendanner's ruling as finding a principal/agent relationship between American and McTravel, *see id.*, what the district judge actually found was that "there is a true agent/principal relationship between American and its *travel agents.*" *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 85 C 7079, slip op. at 11 (emphasis added). Indeed, Judge Easterbrook's reading must have been an oversight. Since Count II (unlike Count III) is predicated on

the allegedly illegal price-fixing agreement between American and IVI, the relevant inquiry for determining the agreement's legality is whether American and IVI were supplier and reseller or principal and agent. By focusing on its own relationship with American, McTravel missed the boat—or, if you will, the plane.

■ Yet, even assuming that McTravel's relationship with American is standard for travel agencies, so that the additional evidence it supplied on this score can be used in examining the IVI–American relationship, McTravel cannot escape summary judgment. The fact that travel agencies engage in activities outside of their roles as agents for the airlines has no bearing on their status as agents with respect to the sale of airline tickets. *Ryko Mfg. Co. v. Eden Services*, 823 F.2d at 1124. And McTravel's efforts to make capital out of the fact that travel agencies assume the credit risk on credit card sales over the telephone is unavailing. As American points out:

> Airlines do not force travel agents to accept telephone credit card sales.... McTravel admits that not obtaining a signature and card imprint on telephone sales is contrary to ARC policies, and that if it follows the proper procedures, it has no credit risk. Any risk that McTravel assumes by accepting *unauthorized* methods of payment is a risk that is peculiarly within its control and does not change its status from an agent to a reseller. *Mesirow v. Pepperidge Farm, Inc.*, 703 F.2d 339, 343 (9th Cir. 1983).

American's Reply Brief at 26 (citing McTravel's Opposing Mem. at 27 n. 9); *see also American Oil v. McMullin*, 508 F.2d 1345, 1349 (10th Cir.1975).

Indeed, McTravel's argument that travel agencies do not serve as agents of the airlines in issuing tickets appears almost facetious in light of the disclaimer it provides in documents to its customers:

"McTravel is only an agent for the airlines, hotels and car rental companies, which means that they pay us to help you buy services from them. Therefore, we are not responsible for the acts of those airlines, hotels and rental companies, and we cannot guarantee that they will do what they promise to do." McTravel wants to be considered an agent of the airlines for some purposes and a reseller of airline tickets for others.

It cannot. As their title indicates, travel agencies are agents. In an effort to avoid the ramifications of this fact, McTravel makes one final thrust. It asserts in a single sentence of its response brief that the fact that American sells some 30% of its tickets directly to travelers vitiates the agency exception to § 1 liability here because "the rule allowing a principal to set the price at which its agent sells has no application when they are horizontal competitors." McTravel's Response Brief at 22–23 (citing *United States v. Masonite Corp.*, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942); *Sun Oil Company v. F.T.C.*, 350 F.2d 624, 633–34 (7th Cir.1965), *cert. denied*, 382 U.S. 982, 86 S.Ct. 559, 17 L.Ed. 2d 473 (1966)).[6] Judge Getzendanner twice rejected this position, finding that although American does act as a travel agency for a substantial portion of its sales, "there is no true compeition between the airline and the agent." *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 85 C 7079, slip op. at 10–11, *on rehearing*, slip op. at 8 (January 8, 1986) [1986 WL 891].

Yet, Judge Getzendanner's finding at the preliminary injunction stage does not mean that there is no genuine factual issue on this score. McTravel has presented testimony of a number of competent witnesses that airlines do compete with travel agencies for sales. If, as McTravel contends, the agency exception does not apply when the principal competes at the same level of distribution as its agents, then McTravel

---

6. Despite more than one hundred pages of rambling text, the defendants made no mention of these two cases, relying instead on Judge Getzendanner's factual finding that American does

not compete with travel agencies. Footnote 1 above and the discussion below will hopefully clarify for the defendants the inadequacy of their responses.

has the right to have a jury resolve the factual dispute.

In *Masonite,* the Supreme Court held that *General Electric* did not protect the holder of a patent on hardboard who had entered into an agreement with its competitors under which the product was shipped to the competitors on consignment, title remained in the patent-holder, and the patent-holder set the prices at which the product was to be sold. McTravel reads this case as establishing that *General Electric*'s agency exception to § 1 does not apply whenever the principal is in competition with its agents.

The problem with this interpretation of *Masonite* is that, in *General Electric,* the principal, a patent holder and manufacturer of electric lamps, sold the lamps both directly through its employees and through authorized agents. Thus, if McTravel's interpretation of *Masonite* is correct, then *Masonite* did not merely distinguish *General Electric;* rather, it effectively overruled the earlier case.

In *Sun Oil,* the Seventh Circuit seemed to hold that *Masonite* did just that. *Sun Oil* was an appeal from a Federal Trade Commission finding that Sun had violated § 1 through a consignment arrangement with its dealers similar to the one held illegal in *Simpson.* The FTC, having ruled before the Supreme Court handed down *Simpson,* had determined that *General Electric* did not protect Sun, on the grounds that, because there was both horizontal price fixing among the dealers in addition to vertical price fixing between Sun and each dealer, *Masonite* controlled.

By the time the Seventh Circuit ruled on the appeal, the Supreme Court had issued its ruling in *Simpson.* Thus, the Court of Appeals was easily able to affirm the FTC's ruling on the basis of that opinion. 350 F.2d at 635. Nevertheless, the Court also indicated that *Masonite* alone justified the FTC's determination that *General Electric*'s agency exception did not apply. 350 F.2d 633–35. The Court concluded by noting that the combination of *Masonite* and *Simpson* left *General Electric* narrowly limited to "its special facts." 350 F.2d at 635. "Thus limited, it is now undoubtedly the law that, with regard to unpatented products, no such 'exception' exists." *Id.*

Were *Sun Oil* the last word by the Seventh Circuit on this issue, McTravel would clearly prevail here. But it is not. In *Morrison v. Murray Biscuit Co.,* 797 F.2d 1430 (7th Cir.1986), the Court unequivocally revitalized *General Electric*'s agency exception for ordinary manufacturers as well as patent holders. In so doing, it read *Simpson* and *Masonite* as narrow holdings prohibiting manufacturers from merely labelling dealers and competitors as agents in order "to circumvent the rule against price fixing." 797 F.2d at 1436.

Judge Easterbrooks' principal-agent analysis in ruling on McTravel's appeal confirms that *Morrison* applies to this case, so that unless McTravel can establish a genuine issue of fact as to whether IVI was a "true agent" of American, defendants are entitled to summary judgment here.[7] As discussed above, it cannot. Accordingly, the agreement between American and IVI regarding the advertising of discounts is legal under § 1 of the Sherman Act, and the defendants are entitled to summary judgment on Count II.

Count I, like Count II, attacks the relationship between American and IVI and American's response to IVI's complaint,

---

7. *McTravel makes much of Judge Easterbrook's suggestion that price fixing agreements between principals and agents may be subject to the rule of reason. Yet, as Judge Easterbrook noted, and defendants emphasize, every case that has found a true agency relationship has upheld the price fixing agreement without further analysis. Illinois Corporate Travel, Inc. v. American Airlines, Inc., 806 F.2d at 729. So long as the agency relationship is a bona fide one, a price fixing agreement between a principal and an agent is lawful. The Supreme Court's condemnation of the agreements in Masonite, though appearing at first blush to be the result of an extensive rule of reason analysis, is better viewed as reflecting the Court's conclusion that the patentee was using the agency label as a subterfuge "to enlarge that monopoly of the patent." Mercoid Corp. v. Mid–Continent Co., 320 U.S. 661, 666, 64 S.Ct. 268, 271, 88 L.Ed. 376 (1944); Morrison v. Murray Biscuit Co., 797 F.2d at 1437.*

but it does so with a slightly different focus. Count I alleges as the illegal concerted action not the contract between American and IVI, but an alleged conspiracy between them, initiated by IVI, to deprive McTravel of the ability to compete with IVI by prohibiting McTravel from selling discounted American tickets.

This court is aware of no case which has expressly held that a principal and an agent, though protected from § 1 liability for a contract in restraint of trade, can nonetheless be held liable for a conspiracy in restraint of trade when the alleged conspiracy arises out of the lawful contract. Yet, neither IVI nor American have raised this defense to Count I, and the Seventh Circuit appears to have accepted the validity of McTravel's claim if McTravel can show that "American conspired with other travel agencies to cut off competition from an upstart with a novel way of doing business." *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d at 726. In other words, although American and IVI cannot be held liable solely for their agreement on the advertising of discounts, they could be held liable if this agreement flowed, not from American's unilateral determination of an appropriate advertising policy, but instead from a conspiracy initiated by IVI to thwart its discounting competitors.

American presented two defenses to this claim in its argument before Judge Getzendanner. "First, it argue[d] under the intra-enterprise conspiracy doctrine that as a matter of law a principal cannot conspire with its agent. Next, American argue[d] that there is insufficient evidence of such conspiracy to justify the issuance of a primary injunction." *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 85 C 7079, slip op. at 11.

Judge Getzendanner ruled that the intra-enterprise conspiracy doctrine, most recently discussed by the Supreme Court in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (a corporate parent cannot conspire with its wholly owned subsidiary), does not apply with respect to the principal-agent relationship at issue in this case because "American and each of its travel agents [are not] a single economic entity with a complete unity of purpose." *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 85 C 7079, slip op. at 11 (citing *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968)). The Seventh Circuit agreed, *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d at 726, and American has not pursued this argument here.

American does challenge, however, McTravel's contention that the evidence creates a genuine issue of fact as to whether American acted against McTravel because of an illegal conspiracy with IVI. An immediate problem with American's argument and McTravel's response is that they ignore the distinction between Count I and Count II, and thus misapply cases with fact patterns closer to the latter.

*Monsanto Co. v. SprayRite Services Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), *United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), and other cases dealing with the evidentiary burden required to get to the jury on an allegation of concerted action in a § 1 case did not involve principal-agency relationships. The sole issue in those cases was the nature of the evidence needed to establish an agreement between the manufacturer and the distributor. In this case, by contrast, there is no question that American and IVI had an agreement on advertising, and that there is sufficient evidence for a jury to find that American's action against McTravel was causally related to this agreement. This genuine factual issue does not help McTravel, however, because the principal-agent relationship between American and IVI makes this agreement legal. Instead, to get to the jury on Count I, McTravel must establish a genuine issue of fact as to whether this agreement came about as a result of IVI's efforts to keep McTravel from successfully competing as a discount travel agency.

McTravel contends that the factual dispute over the timing of American's decision to implement its no-advertising policy suf-

fices. Since the jury could find that the policy arose only after IVI (and other travel agencies) complained to American, McTravel insists that a jury also could find that American was serving as IVI's "cat's paw." *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d at 726.

In *Monsanto*, the Supreme Court ruled that, to get to a jury on a § 1 claim, "there must be evidence that tends to exclude the possibility of independent action by the manufacturer and the distributor. That is, there must be direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. SprayRite Services Corp.*, 465 U.S. at 768, 104 S.Ct. at 1472–73. Complaints from the plaintiff's competitors, followed by action on the part of the manufacturer are insufficient to meet this burden: "Permitting an agreement to be inferred from the existence of complaints, or even from the fact that termination came about 'in response to' complaints could deter or penalize perfectly legitimate conduct." *Id.* at 763, 104 S.Ct. at 1470.

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), went one step further. "[I]f the factual context renders [plaintiff's] claim implausible—if the claim is one that simply makes no economic sense—[plaintiff] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary." *Id.* at 1356.

█ It is clear that American took action against McTravel in response to IVI's complaint. Even under *Monsanto* alone, however, this dispute does not suffice to establish a genuine issue as to the existence of an unlawful conspiracy between IVI and American. *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d at 726 ("Evidence that American discussed both price and McTravel with other agents does not support an inference of conspiracy.").

*Matsushita* enlarges this deficiency. Since it was lawful for American to enter into the no-advertising agreement with IVI, McTravel must show not only that an agreement existed, but that the agreement was sparked by IVI. To demonstrate that this was this case, McTravel argues that the policy was contrary to American's pecuniary interests: Since American receives the same amount from its agents irrespective of the price they charge their customers, the sale of discounted tickets, which can only result in additional sales, increases American's revenue. Yet this very argument brings *Matsushita*'s added evidentiary burden into play. McTravel has presented nothing to satisfy this burden. The defendants are entitled to summary judgment on Count I.

## CONCLUSION

The defendants are entitled to summary judgment on the three remaining counts in the complaint. Judgment is entered for the defendants.

## ON MOTION FOR RECONSIDERATION

In well-written and undoubtedly heartfelt memoranda, McTravel has moved for reconsideration of this court's November 18, 1988 order granting summary judgment for American and IVI. Because that order sufficiently addressed most of the arguments in McTravel's current motion, this court will deal with McTravel's renewed arguments in summary fashion.

The complaint contained three counts: Count I alleged a concerted refusal to deal; Count II alleged horizontal resale price maintenance; Count III alleged vertical resale price maintenance. Although the court addressed them in reverse order in the initial decision, the court will tackle them sequentially here.

With regard to Count I, the court held that to prove a concerted refusal to deal, McTravel had to show that its termination flowed from IVI's efforts to wipe out its discounting competitor. The fact that there was a *contract* on resale price maintenance was not enough because *that* agreement was lawful per the agency exception. McTravel's argument—that the court found an agreement between American and IVI so nothing more need be

shown to get to the jury—ignores that ruling. The "agreement" it says this court found in the decision was an agreement on *prices*, not an agreement to terminate McTravel, and thus was insufficient to establish unlawful concerted action.

Indeed, McTravel's reference to the Supreme Court's ruling in *Monsanto* that, once a price-fixing agreement is established, the court can infer that any subsequent refusal to deal by the manufacturer resulted from this agreement, only proves the point. For if that inference held even in cases of price-fixing agreements between principals and their agents, then the agency exception to § 1 would be meaningless. It is not.

As for Count II, McTravel contends that this court erred in interpreting *Masonite*, the Supreme Court ruling that followed *General Electric* and that *Sun Oil* interpreted as effectively nullifying *General Electric*'s agency exception. McTravel asserts that *Masonite* stands for the proposition that where the manufacturer and the distributor compete at the distribution level, the agency exception does not apply. Thus, since there is a genuine factual issue as to whether American competed with travel agencies, McTravel contends that the agency exception does not apply here.

Yet, as this court pointed out in its decision, *General Electric* also involved horizontal competition between the manufacturer and the distributor, so if *Masonite* stands for what McTravel says it does, "then *Masonite* did not merely distinguish *General Electric;* rather, it effectively overruled the earlier case." The question thus becomes whether to read *Masonite*, or instead *General Electric*, narrowly. *Sun*

*Oil* (the Seventh Circuit's 1966 case), suggested that *General Electric* was the narrow ruling, and that *Masonite* was the broad one—effectively vitiating the agency exception. But *Morrison* and *Illinois Corporate Travel*, two Seventh Circuit cases within the past three years, have (implicitly) rejected *Sun Oil* and have stated unequivocally that *General Electric*'s broad agency exception applies. Since, as noted above, *General Electric* also involved horizontal competition between the manufacturer and its distributors, McTravel's argument that the (alleged) competition between American and its travel agents takes this case outside the agency exception is incorrect.*

Finally, with respect to Count III, this court held that there was no agreement between McTravel and American on prices, so McTravel could not state a claim for *concerted* resale price maintenance between McTravel and American. McTravel insists, however, that because it was approved by the ARC, and because American filed a general concurrence to the ARC, McTravel and American did have an agreement on advertising. Yet, McTravel did not gain the recognition of the ARC until March, whereas the fracas between American and McTravel occurred in January. Thus, it is erroneous to suggest that McTravel and American ever agreed on the advertising policy. Moreover, even if they did, the agency exception would still bar McTravel's claim.

McTravel concludes by arguing that this court erred in finding a true agency relationship between American and its travel agents, listing six factual issues on which it says the court misread the record. Yet, when McTravel asserts in its reply memo-

---

* In its reply memorandum, McTravel concedes that its argument is not that this court has misread *Morrison* and *Illinois Corporate Travel*, but is instead that the Seventh Circuit has misread *General Electric* and *Masonite*. According to McTravel, a court of appeals has no authority to refuse to follow a Supreme Court ruling, and when it does so, the district court must ignore the circuit court opinion and follow the Supreme Court. *But see Indianapolis Airport v. American Airlines, Inc.*, 733 F.2d 1262 (7th Cir. 1984).

Fortunately, this court need not decide whether McTravel is correct on this point. Although

*Morrison* and *Illinois Corporate Travel* overruled *Sun Oil*'s reading of *General Electric* and *Masonite*, they did not overrule either of the two Supreme Court opinions. *General Electric* and *Masonite* involved similar fact patterns but came out differently, and it was up to the circuit courts to determine which was the broad holding and which was the narrow one. *Sun Oil* came out one way; *Morrison* and *Illinois Corporate Travel* came out another. But none of the three overruled either of the two, and therefore this court has no choice but to abide by the Seventh Circuit's more recent approach.

randum that the agency relationship between American and travel agencies "serves no function other than to circumvent the rule against price-fixing," it essentially concedes what this court has already found: There is an agency relationship between American and travel agencies. To be sure, McTravel insists that this agency relationship is not a bona fide one, but that argument has absolutely no support anywhere in McTravel's evidence; indeed, McTravel does not even hint at another way by which American could efficiently and effectively sell its tickets to customers. In any case, this court remains convinced that its analysis of the relationship between airlines and travel agents was correct and that accordingly, as a matter of law, American and its travel agencies have a true agency relationship.

McTravel's motion to reconsider must therefore be denied.